the appraiser it was developed by the oral testimony taken that the legacy in question was in fact given in liquidation of a claim which might have been enforced against the estate by action. In that case, though the district attorney was unsuccessful, he had an undoubted right to investigate the matter for the purpose of satisfying himself that the recital in the will was not a subterfuge for avoiding the payment of the tax. This would have been a proper case for the issuance of a certificate upon the facts being shown, but the court should not be called upon to rely upon his recollection for each individual case, nor be required to examine the records of the court to ascertain the facts in any particular case. A certificate will only be granted where an affidavit is filed disclosing all the pertinent facts, and giving data from which the court may be able to make independent investigation if desired.

---

(4 Misc. Rep. 594.)

### In re LUDLOW'S ESTATE.

(Surrogate's Court, Westchester County. August, 1893.)

TRANSFER TAX—POWERS OF APPRAISER.

Laws 1892, c. 399, (taxing transfers of property by will,) § 11, provides for the appointment of an appraiser to fix the fair market value, at the time of the transfer, of property of persons whose estates shall be subject to the tax. Section 22 declares that the words "estate" and "property," as used in the act, shall be taken to mean the interest of the testator transferred, and not the interest passing to the legatees. *Held*, that the appraiser has authority only to fix the value of property owned by testator when the transfer took effect, and he cannot deduct funeral and administration expenses, or fix the value of legacies when they would come into the hands of legatees.

Proceeding for the appraisement of the estate of Mary K. Ludlow, deceased, for taxation, under Laws 1892, c. 399.

Duncan Smith, for the executrix

COFFIN, S. The act of 1892 imposed a tax upon the transfer of property by will, as in this case. The act further provides (section 11) for the appointment of an appraiser to fix the fair market value, at the time of the transfer thereof, of property of persons whose estates shall be subject to the payment of any tax imposed by the act. By the twenty-second section, it is declared that the words "estate" and "property," as used in the act, shall be taken to mean the property or interest therein of the testator, etc., passing or transferred, and not as the property or interest therein passing or transferred to individual legatees, etc. It would therefore seem that the appraiser's duty was ended when he fixed the value of the property therein of the testatrix at the time when the transfer took effect. By deducting the items for funeral expenses, expenses of administration, and commissions, he not only exceeded the power delegated to him by the act, and the order appointing him, but he fixed the value of the estates transferred when they would finally come into the hands of the legatees; and this, as we have seen, is contrary to the express

provisions of the act. If this be a correct interpretation of the act, as it certainly seems to be, then if a husband die, leaving his personal estate of $50,000 to his widow, and he was owing simple contract debts to the amount of $48,000, the appraiser should report the value of the property transferred, and the, widow would be liable to be assessed by the surrogate the tax on the whole $50,000. The surrogate would give her notice thereof, and she would have a right to appeal therefrom. On such appeal, it might be shown that the testator, after the payment of debts and funeral expenses, bequeathed the residue of his state to his widow, and there might be shown the amount of such debts and funeral expenses, when, doubtless, the surrogate would allow them to be deducted from the whole value as fixed by the appraiser, and the balance remaining would be the actual value of the property really transferred. The appraiser has no authority conferred upon him to ascertain the amount of debts the deceased owed. The value of the one-half of the estate transferred to Mrs. Warren, and subject to the tax of 1 per cent., is therefore $17,482.48, and the value of that of which Mrs. Gould had the use for life is the same amount, and subject to the like tax. Of course, the amount of the tax must be apportioned between the life beneficiary and the legatees in remainder. Her interest having been fixed at $10,175, she must pay 1 per cent. of that sum. On $7,307.48, being the residue, the four children of Mrs. Gould must pay the tax, as on their interest in the remainder. Each one's share is therefore $1,827.

---

(4 Misc. Rep. 380.)

### In re BARTLETT'S ESTATE.

(Surrogate's Court, Westchester County. July, 1893.)

ADVANCEMENTS—CONSTRUCTION OF WILL.

> Testator gave all his estate to his widow for life, and provided that "at her death the whole thereof (including the indebtedness to my estate of my sons W. and E. for moneys heretofore lent and advanced by me to them, amounting altogether to $12,000) shall be divided into as many equal shares as shall equal the number of my children, * * * deducting from the share of each of my sons W. and E. $6,000 for moneys heretofore advanced by me to them, and the respective shares of my sons W. and E. are hereby charged with said sums." *Held*, that the sums to be deducted from the shares of W. and E. were not advancements, and were therefore subject to the legacy tax.

Appraisement of the estate of William H. C. Bartlett, deceased, subject to the transfer tax.

The material portion of decedent's will is as follows:

"All the rest, residue, and remainder of my property and estate I give to my wife, Harriet, for her use during her natural life, and at her death the whole thereof (including the indebtedness to my estate of my sons William C. and Edward C. for moneys heretofore lent and advanced by me to them, amounting altogether to twelve thousand dollars) shall be divided into as many equal shares as shall equal the number of my children, seven in number. If any child of mine shall have died before the death of my said wife, leaving lawful issue surviving my said wife, then such issue shall have and be entitled to the share which the parent would have been entitled to; and I direct my said executors to distribute the said shares to my