In the Matter of the Appraisal of the Property of ERASTUS S. EDGERTON, Deceased, under the Act in Relation to Taxable Transfers of Property.

JOHN R. HONEYWELL, Treasurer of the County of Delaware, Appellant; DELOS A. MONFORT, as Administrator, etc., of ERASTUS S. EDGERTON, Deceased, and Others, Respondents.

*Transfer tax — transfers of stock in consideration of an agreement to pay annuities.*

Transfers of stocks made in consideration of an agreement, evidenced by bonds executed by the transferees, conditioned for the payment of an annuity to the party making the transfer, and to other designated persons, and for the deposit of the securities as collateral security for the performance thereof, with a provision that, in case of default in the payment of the annuities, the depositary might collect sufficient dividends on the securities to pay the amount due, or sell them to the extent necessary to raise such amount, and accompanied by an agreement for the erection of a family monument, are not subject to taxation under chapter 713 of the Laws of 1887 and chapter 399 of the Laws of 1892, as having been made in contemplation of the death of the party making such transfer.

APPEAL by John R. Honeywell, the county treasurer of the county of Delaware, from an order of the Surrogate's Court of the county of Delaware, bearing date the 8th day of November, 1897, and entered in said Surrogate's Court, determining the value of the estate of Erastus S. Edgerton subject to taxation under the act in relation to taxable transfers of property, and fixing the amount of the tax.

*Emmet R. Olcott*, for the appellant.

*William B. Hornblower*, *Howard A. Taylor* and *Lewis B. Woodruff*, for the respondents.

MERWIN, J.:

On the 15th of April, 1893, Erastus S. Edgerton, a resident of this State, died intestate at Franklin, in the county of Delaware. He left a widow and two sisters and a nephew and two nieces, the children of a deceased brother, as his only heirs and next of kin. He had been doing business in the State of Minnesota and some of his property was there and letters of administration upon his estate

were there taken out by his brother-in-law, Delos A. Monfort. No administration has been granted in this State. On or about the 31st of March, 1888, he made transfers of the greater portion of his property to his sisters and nephew and nieces, and the controversy in this case is over the question whether such transfers are subject to taxation under the act relating to taxable transfers of property. (Chap. 713, Laws of 1887; chap. 399, Laws of 1892.)

He transferred stocks of the estimated value of $78,035 to his sister, Mary J. Monfort, taking back from her and her husband, Delos A. Monfort, a joint and several bond in the penal sum of $156,000, dated March 31, 1888. This was conditioned for the performance of the agreements therein stated, and there was a recital that the obligee had transferred or was about to transfer to said Mary J. Monfort for her own use and benefit certain securities, a list of which was attached in a schedule, with a valuation in the aggregate as above stated. The obligors thereby agreed to pay or cause to be paid to said Erastus S. Edgerton the sum of $5,500 per annum during his life, the sum of $2,750 to be paid on the tenth of July then next and a like sum every six months thereafter. The obligors agreed " to deposit as collateral security for the performance of this agreement the said securities or the certificates or other evidence thereof that may be received by the undersigned, the said Mary J. Monfort, or such other securities as may be approved of by the said Erastus S. Edgerton, in lieu of the whole or any part thereof, the same to be deposited with The Saint Paul Trust Company, of Saint Paul, Minnesota, and to remain so deposited with the said Trust company until the death of the said Erastus S. Edgerton, when the undersigned, Mary J. Monfort, or her executors, administrators or assigns shall be entitled to the delivery of the same by the said Trust Company." In case the obligors failed to make any payment for a period of sixty days after it became due, then the trust company was authorized to collect dividends on the securities until sufficient should have been collected to pay the amount due, or upon reasonable notice to both parties sell such portion of the securities as might be necessary to realize a sum sufficient to pay such amount and then pay the same to said obligee. The obligors agreed on behalf of themselves and their respective executors, administrators and assigns to deposit and keep deposited with the trust company such powers

of attorney as might be necessary to enable the trust company to carry out these provisions. It was provided that the obligors should be at liberty, with the consent of the obligee, to sell any of the named securities and substitute others in their place, to be held by the trust company in the same manner as the original securities.

Mr. Edgerton also transferred to his sister, Mrs. Monfort, other stocks, of the value then of about $50,000, taking from her and her husband a bond in the penal sum of $100,000, dated March 31, 1888. This provided for the payment to Eliza C. Edgerton, the wife of Erastus S. Edgerton, of the sum of $3,000 per annum during her life, with provision for deposit of collateral security until the death of said Eliza, and in other respects the bond was similar to the one first above described.

A similar transfer was made by Mr. Edgerton to his sister, Elizabeth E. Wilcox, of stocks of the value of about $47,500, a bond being given back by Mrs. Wilcox in the penal sum $95,000, conditioned for the payment of an annuity to Mr. Edgerton of $2,800 during his life, and containing other provisions similar to the bond first described.

A similar transfer was made by Mr. Edgerton to his nephew, Erastus D. Edgerton, and his nieces, Helen E. Edgerton and Mary A. Edgerton, of stocks of the estimated value of $78,375, and a joint and several bond given back in the penal sum of $156,000, conditioned for the payment of $5,500 per annum to said Erastus S. Edgerton during his life, and containing other provisions in like form as in the bond first described. A similar transfer was made to these parties of stocks of the value of about $50,000, and a bond taken back for the payment of an annuity of $3,000 to Mrs. Eliza C. Edgerton during her life, containing conditions like the one given for a like annuity, and above referred to.

At the same date a joint and several bond was given by Delos A. and Mary J. Monfort, Erastus D., Helen E. and Mary A. Edgerton to Erastus S. Edgerton in the penal sum of $5,500, conditioned for the payment of annuities to three named persons during their respective lives. These annuities amounted in the aggregate to $500 a year, and were to an uncle, an aunt and a cousin of said Erastus S. Edgerton. No transfer or a special consideration for this bond appears.

At the same date, by indenture between Erastus S. Edgerton of the first part, and Delos A. Monfort and Erastus D. Edgerton of the second part, Erastus S. Edgerton transferred to the parties of the second part and the survivor of them certain stock, and the latter agreed that, upon the death of Erastus S. Edgerton, they would convert the same into cash, and from the proceeds apply $10,000 to the erection of a family monument on the burial plot owned by him in the Ouleout Cemetery, at Franklin, and, if any surplus should remain of such proceeds, pay the same to the extent of $2,000 to the Ouleout Valley Cemetery Association in trust, to invest the same and apply the income to the repair, preservation or renewal of any monument upon the said plot, or for planting or cultivating trees or plants in or around the same. It was also provided in said instrument that the income of said stock should, during the lifetime of Erastus S. Edgerton, be divided between his sister, Mary J. Monfort, and the children of Thomas H. Edgerton, a deceased brother, one-half to said Mary and the other half to said children, and in case of any surplus over $12,000 from the proceeds of the sale of the stock, it should be divided the same way. Provision was also made for the transfer of the legal title of the stock to the parties of the second part, for the deposit of the certificates with the said St. Paul Trust Company until the death of said Erastus S. Edgerton, and for the appointment of a substitute in case of the death of both of the parties of the second part before the death of Erastus S. Edgerton.

The claim on behalf of the county treasurer is that all these transfers were taxable. The Surrogate's Court held to the contrary.

It appears that Mr. Edgerton had other property to the amount of about $40,000 or upwards, some of which was thereafter disposed of and transferred by him during his lifetime, and the balance came to the hands of his administrator. In 1888 he was of the age of seventy-two years, and his wife was of the age of sixty-eight years. He was not in good health, though he was then recovering from an illness. He had made a will which seems to have been destroyed at or after the transactions of 1888. He was evidently desirous of getting rid of the care of the greater part of the property, and took this method of doing so, and still securing to himself an abundant provision for the needs of himself and wife during their lives.

By chapter 713 of the Laws of 1887, which was in force when

these transfers were made, a tax was imposed upon the transfer of any property " by deed, grant, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor." By chapter 399 of the Laws of 1892, which was in force at the time of the death of Mr. Edgerton, a tax was imposed upon any transfer made " by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect, in possession or enjoyment, at or after such death." Under the act of 1887 transfers to a sister were exempt, otherwise under the act of 1892, unless the estate transferred was less than $10,000.

It is argued by the appellants that the act of 1892 is applicable, and that the transfers in question were made in contemplation of the death of the transferrer, and, therefore, within the provision of that act above quoted. That provision was under consideration in *Matter of Seaman* (147 N. Y. 69, 76) and was construed to refer to grants or gifts *causa mortis*. The transfers here in question were not such gifts or grants, for there was no power of revocation. (*Doty* v. *Willson*, 47 N. Y. 585; 2 Kent Com. 444; *Bliss* v. *Fosdick*, 86 Hun, 162, 173; 151 N. Y. 625.) In no event was Mr. Edgerton entitled to revoke the transfers or resume the title. He was entitled to the annuities; he could, if necessary, cause a sale of the stock to pay any annuity unpaid, and that was the end of his right.

Whichever statute, that of 1887 or of 1892, is deemed to control the case, the question is whether these transfers were intended to take effect in possession or enjoyment at or after the death of the transferrer, within the meaning of the law.

It appears that the certificates of stock held by Mr. Edgerton were assigned by him to the respective transferees, and by them surrendered to the respective corporations and new certificates issued in the names of the respective transferees. These certificates, together with powers of attorney, were deposited with the trust company as required by the bonds and for the purposes therein mentioned. The transferees, however, received the dividends on the stocks and voted thereon. In case of the transfers to Mrs. Monfort and to Erastus D. Edgerton and his sisters, the annuities in fact

paid by them were considerably in excess of the dividends. In case of Mrs. Wilcox the dividends and annuities were about the same. The annuities were all paid so that resort was not had to the collateral security. In one instance other security was substituted in accordance with the provisions of the bonds.

The obligors in the bonds were liable for the annuities whether or not there were any dividends, and although the stocks might become worthless. The title of the stocks vested in the transferees for their own use and benefit according to the recital in the bonds. In performance of their obligations, they deposited with the trust company the certificates as collateral security. Subject to the contingency that would give the trust company the right to exercise its power, their interest was assignable and would in case of death pass to their representatives. The power to the trust company was in the nature of an incumbrance.

It is hardly claimed that a gift *inter vivos*, or an advancement simply, would be within the provisions of the law. . There would be no succession to title at or after the death. (*Matter of Swift*, 137 N. Y. 77; *Matter of Hoffman*, 143 id. 327.) The title would in such a case have passed absolutely before the death in possession and enjoyment. It is, however, argued in the present case that the circumstance that provision was made for the deposit of the certificates as collateral security, changed the situation and indicated an intention that the transfers should not take effect in possession and enjoyment until the death. In fact, the transfers from the time of their delivery did take effect in possession and enjoyment, and there was no provision for disturbing such possession or enjoyment unless the obligors failed to perform their agreements, and then only to the extent necessary to enforce payment of the debts of the obligors. Nothing further was necessary to be done by the grantor or donor to complete the title of the transferees.

It may be observed that in case of the transfers connected with the bonds given for the benefit of Mrs. Edgerton, the right to hold as collateral security ended with the life of Mrs. Edgerton.

The transfers here, aside from the trust deed as to the monument, were, I think, intended to take effect in possession and enjoyment at the time they were made and, therefore, were not within the statute. It can hardly be said there was an attempt to evade the law, inas-

much as under the law, as it was at the time the transfers were made, the sisters who received about two-thirds of the property were exempt.

No particular point seems to be made as to the provision for a monument and care of a burial lot. Assuming that the transfer covered by that instrument would not be deemed to take effect in possession as to the proceeds of the sale of the stock therein mentioned until the death of Mr. Edgerton, still the provision for a monument is considered a part of funeral expenses and so not subject to the tax as ordinarily understood. (*Estate of Millward*, 6 Misc. Rep. 425.) A bequest for maintenance of the decedent's burial lot has been held to be exempt as funeral expenses. (*In re Vinot's Estate*, 7 N. Y. Supp. 517.) It appears that the value of the securities covered by the trust deed did not exceed $12,000; that $10,000 was in fact expended for a monument as therein provided and $2,000 paid over to the cemetery association therein named for the purposes therein expressed. This was probably exempt under the provisions of section 10 of chapter 133 of the Laws of 1847, as amended by chapter 31 of the Laws of 1877. (*Matter of Herr*, 55 Hun, 167.)

I find no good ground for disturbing the conclusion of the Surrogate's Court, and its order and decree should be affirmed.

All concurred.

Order and decree affirmed, with costs.