ESTATE OF HAMILTON : AMERICAN BIBLE SOCIETY and another, Appellants, vs. THRONSON, Public Administrator, and another, Respondents.

*February 7—March 5, 1935.*

For the appellants there was a brief by *Fisher & Fisher* of Janesville, and oral argument by *Cleland P. Fisher*.

For the respondents there was a brief by the *Attorney General, Herbert H. Naujoks,* assistant attorney general, *Neil Conway,* inheritance tax counsel, and *Sidney J. Thronson,* public administrator for Rock county, and oral argument by *Mr. Naujoks* and *Mr. Conway*.

NELSON, J.   John M. Hamilton, a resident of Wisconsin, died on the 20th day of May, 1932, at the age of eighty-two years.   He left an estate consisting of real and personal property amounting to nearly $34,000.   He was a member of the Presbyterian church.   On the 1st day of October, 1919, he paid over to the Board of Foreign Missions of the United Presbyterian Church of North America, a foreign corporation (hereafter called the board), the sum of $1,000.   Upon the receipt of said sum the board executed and delivered to him one of its annuity bonds by which it obligated itself to pay to him, so long as he should live, an annuity of $70. Other similar transactions were had by Mr. Hamilton with the board at other times, involving the following amounts and annuities:

| Date. | Amount. | Annuity. |
| --- | --- | --- |
| March 22, 1916 | $1,000.00 | $60.00 |
| January 15, 1917 | 1,000.00 | 60.00 |
| March 1, 1922 | 1,000.00 | 70.00 |
| September 16, 1925 | 1,000.00 | 70.00 |
| May 14, 1927 | 1,000.00 | 70.00 |
| September 9, 1929 | 1,000.00 | 85.00 |
| March 5, 1931 | 1,000.00 | 70.00 |

A similar transaction was entered into by Hamilton with American Bible Society which involved a gift or transfer of the sum of $1,000.

The county court found that at all of the times mentioned Mr. Hamilton was in good health, had full charge and control of his business affairs, including the making of loans and investments; that he entered into said transactions, and each of them, for the purpose of providing for himself a life income; that each of said transfers of money when completed was made absolute and irrevocable; that the parties to each of said transactions intended that the moneys paid by Hamilton and received by the board and the society were to be used in carrying on the work of said corporations; that no control or supervision over said moneys was retained by Hamilton; that the moneys paid by Hamilton were mingled with and became a part of the general fund of the board and the society.

The material provisions of the annuity bonds issued by the board are as follows:

"THE BOARD OF FOREIGN MISSIONS of the United Presbyterian Church of North America incorporated by the Commonwealth of Pennsylvania, in consideration of a GIFT of ONE THOUSAND 00/100 DOLLARS the receipt of which is hereby acknowledged issues this LIFE ANNUITY BOND and agrees to pay to the order of J. M. HAMILTON of JANESVILLE in the State of WISCONSIN an annuity or yearly sum of SEVENTY 00/100 Dollars in equal semi-annual installments, on June fifteenth and December fifteenth of each year during the remainder of his life and upon the death of said annuitant this obligation shall be void and said annuity shall cease.

"The heirs, executors, administrators or assigns of said annuitant shall be entitled to any proportionate share of said annuity from the last semi-annual payment to the date of said annuitant's death."

The material provision of the annuity bond issued by the society is as follows:

"AMERICAN BIBLE SOCIETY, Bible House, New York, a New York corporation having its office in the Bible House, New York City, HEREBY AGREES AND BINDS itself and its successors to pay upon demand to John M.

Hamilton of Janesville, Wis., during the term of his natural life the annual sum of Eighty-six Dollars in semi-annual payments on the 10th day of April and October in each year, the first payment of Forty-three Dollars to be made on the tenth day of October, 1926.

"AND the said American Bible Society hereby certifies that the said John M. Hamilton desiring to promote the objects of the said Society and in consideration of the execution of this Annuity Bond, has this day contributed and paid to the said Society the sum of One Thousand Dollars for its general uses and purposes."

Pursuant to said contracts, annuities were paid to Mr. Hamilton during his life. The court concluded that all of said transactions amounted to transfers of property intended by Mr. Hamilton to take effect in possession or enjoyment at or after his death.

No contention is made by the attorney general that any of the transactions mentioned involved gifts made in contemplation of death, but he seeks to uphold the conclusion of the county judge on the theory that the moneys paid over to the board and to the society were transfers or gifts of property made by a resident of this state which were intended to take effect in possession or enjoyment at or after his death. Sec. 72.01 (3), Stats.

The appellants contend that the payments of the several sums to them were either outright gifts intended to take effect in possession and enjoyment immediately, not at the time of his death, or amounted to the purchase of annuities.

The questions for decision therefore are, (1) whether the transactions mentioned involved gifts intended to take effect in possession or enjoyment immediately or upon the death of the donor, (2) whether the transactions involved merely the purchase of annuities.

It is very clear, under the undisputed facts, that the several transactions amounted either to the making of gifts to

the appellants, the purchase from them of annuities, or a combination of both. Mr. Hamilton was interested in the missionary work of the Presbyterian church. He was also interested in the work of the American Bible Society. He expressed a desire to do more for the good of the world than he had done and thought he could do it by making the gifts mentioned. Had his sole motive been to acquire an income for the remainder of his life, he no doubt would have purchased from some insurance company regular annuity policies from which the returns would have been much greater. Clearly, his sole motive was not to acquire annuity contracts. He obviously intended that the moneys paid to the appellants were in part at least gifts or contributions to the work the appellants were doing. The money which he turned over to the appellants became their absolute property, to do with as they saw fit. There was no agreement in any way restricting its use or expenditure. There was no agreement that the money should be held in trust, should be invested in securities and held to secure the annuity bonds, or that it should be invested and the income or any part thereof paid to Mr. Hamilton. The appellants were vested with absolute ownership of the money when it was turned over to them. The payment of the annuities was in no manner dependent upon the preservation of the fund or the income arising therefrom. The obligation to pay the annuities was absolute regardless of the use or disposition made of the money turned over. The appellants obtained nothing when Mr. Hamilton died that they did not already have except a release from the annuity bonds. Nothing that the court did added anything to the possession or enjoyment of the money theretofore paid to them by Mr. Hamilton.

Notwithstanding all of this, it is contended by the state that the several transactions involved gifts or transfers of property intended to take effect in possession or enjoyment

upon the death of Mr. Hamilton, within the meaning of sec. 72.01 (3) of the statutes. That statute was borrowed from the state of New York. *Estate of Bullen,* 143 Wis. 512, 128 N. W. 109; *Estate of Schranck,* 202 Wis. 107, 230 N. W. 691. It is elementary that where a statute is adopted from another state, which statute has been construed by the courts of that state prior to its adoption, it should be given the same construction here. In other words, the statute as construed is adopted. *Draper v. Emerson,* 22 Wis. 147; *Dutcher v. Dutcher,* 39 Wis. 651; *Westcott v. Miller,* 42 Wis. 454; *Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430; *Estate of Bullen, supra; Ditsch v. Finn,* 214 Wis. 305, 252 N. W. 562. It was enacted as sec. 1 (3) of ch. 44, Laws of 1903.

Prior to the time when it was adopted, it had been construed by the courts of New York in at least two cases involving transactions similar to those in the present controversy. *Matter of Edgerton,* 35 App. Div. 125, 54 N. Y. Supp. 700, affirmed without opinion on January 31, 1899, by the court of appeals, 158 N. Y. 671, 52 N. E. 1124; and *Matter of Thorne,* 44 App. Div. 8, 60 N. Y. Supp. 419, 421. In the former case one Edgerton transferred to relatives certain stocks in consideration of the payment to him during his life of certain annuities. The stock was assigned and later transferred on the books of the corporations. The obligors agreed to deposit the said securities or certificates with a certain trust company to secure the annuity payments, and also to furnish bonds conditioned for the performance of the agreements. The transferees received the dividends on the stocks. It was there held that the transfers were intended to take effect in possession and enjoyment at the time they were made and therefore were not taxable under the terms of the very law which we subsequently borrowed. In *Matter of Thorne, supra,* property of the value of $100,000 was transferred without reservation to a Mrs. Huff, who

agreed to take care of Mr. Thorne during his lifetime and to furnish him with money as he needed it. It was there held that the agreement placed no limitation upon the right of Mrs. Huff to use and enjoy the property; that the title in her was absolute; that she could make any disposition of it which she chose; and that she was not required to use the specific property or its proceeds for the benefit of Thorne. Commenting upon certain testimony of Mrs. Huff which, it was contended, limited her ownership of the property, the court said:

"Taking that part of her testimony which is relied upon by the respondent, it amounts to no more than the purchase of an annuity by the testator, and such result does not authorize the imposition of the tax. (*Matter of Edgerton,* 35 App. Div. 125, 54 N. Y. Supp. 700.) The only difference between that case and the one we are now considering is that in the former the annuity was of a definite specific sum, while in the latter the amount is indefinite."

It is further contended by the attorney general that the rule applicable to the construction of a statute adopted from another state is not an absolute one to be followed under all circumstances, but is subject to the limitation that where the construction placed upon a statute before its adoption is inconsistent with the spirit and policy of the state adopting it, and such construction is not in harmony with the decisions of the courts of the latter state, it should not be applied. 26 Am. & Eng. Encyc. of Law (2d ed.), pp. 702, 703. That contention is grounded upon the assertion that the construction given to the statute by the courts of New York in the *Edgerton* and *Thorne Cases* is not in harmony with the decisions of this court rendered after its adoption in analogous situations. Citing *Estate of Bullen, supra; Estate of Schranck, supra; Estate of Waite,* 208 Wis. 307, 242 N. W. 173; *Estate of Ogden,* 209 Wis. 162, 244 N. W. 571. In our opinion the asserted exception to the rule may not be invoked for the reason that the cases cited did not deal with analogous

situations. In *Estate of Bullen, supra,* a conveyance·of personal property in trust for the use of Mr. Bullen, his wife, and certain relatives, was considered. The trust conveyance reserved to the grantor the right to direct and control the distribution of the trust estate and to revoke and vacate the trust. Mr. Bullen received the entire *net income* from the trust estate during his lifetime. In *Estate of Schranck, supra,* a life estate in the land conveyed was reserved. In *Estate of Waite, supra,* a transfer was made by means of a voluntary irrevocable trust in which the donor retained *the income* for life and the right to direct the distribution of the corpus after his death. In *Estate of Ogden, supra,* real estate was con-veyed by deed absolute upon its face, but subject to the under-standing of the grantee expressed in writing and fully ac-knowledged that the grantor should have the entire income from the estate during his lifetime. In all of these cases it was properly held that the transfers or gifts were taxable in that they were not intended to take effect in possession or en-joyment until after the death of the grantors or transferors. Those decisions do not rule the present controversy where the facts are in no sense analogous. The following cases are in harmony with the views here expressed : *In re Honeyman's Estate,* 98 N. J. Eq. 638, 129 Atl. 393; *People v. United Christian Missionary Society,* 341 Ill. 251, 173 N. E. 132. The only courts holding a different view so far as we can dis-cover are those of Pennsylvania. *Conwell's Estate,* 5 Pa. Co. Ct. Rep. 368; *Todd's Estate,* 237 Pa. 466, 85 Atl. 845, 45 L. R. A. (N. S.) 868; *Barber's Estate,* 304 Pa. 235, 155 Atl. 565, 567. In those cases the courts of Pennsylvania con-cluded that gifts made under somewhat analogous circum-stances were taxable. However, in *Barber's Estate, supra,* a very recent case, it was said :

"The burden is on the Commonwealth to show, first, that the agreements contemplated the payment of income or profits

as *distinguished from the fixed charge that had no relation
to the principal,* and, second, that the actual receipt of the in-
come at Mrs. Barber's death was what was intended to be
covered by the statute by the words 'take effect in enjoyment
after death.' "

In that case large gifts to charity were considered. Each
of the gifts was to be held in perpetuity and only the income
used. Mrs. Barber was to be paid four per cent during her
lifetime from one of the trusts and five per cent per annum
from the others. In discussing whether the interest paid to
Mrs. Barber was an annuity or income, the court said :

"If it were an annuity, the property or *fund would become
dissolved among the general properties of the Board,* but the
instruments specifically require that the fund should not only
be kept alive as the basis of an income, but, should be kept
intact as a trust fund forever."

Basing its decision upon the conclusion that the moneys to
be paid to Mrs. Barber were income or profits rather than an
annuity, the court held that the enjoyment of the income did
not take effect until her death.

The facts of that case are clearly distinguishable from
those here where the moneys were not impressed with a trust
and were undoubtedly "dissolved among the general prop-
erties of the Board." From the language quoted from the
opinion in *Barber's Estate, supra,* it would seem that the su-
preme court of Pennsylvania has established a rule in accord
with our conclusion in this case. With the exception of the
decision in *Conwell's Estate, supra,* which was a decision by
a county court, no case has been cited which holds that un-
restricted gifts made by a donor are taxable, although an
agreement is entered into at the same time which provides
for the payment of an annuity. It is our conclusion that the
transactions do not amount to transfers or gifts intended to
take effect in possession or enjoyment after the death of the
grantor within the meaning of sec. 72.01 (3).

No contention is made that if the transactions herein amounted to purchases of annuities by Mr. Hamilton, the money paid over by him to the appellants was in whole or in part taxable under the inheritance tax law of this state. Prior to the time when sec. 72.01 (3) was enacted in 1903, it had been held by the courts of New York that annuities were not taxable under that very statute which we adopted. *Matter of Edgerton, supra,* and *Matter of Thorne, supra.*

*By the Court.*—The portions of the order appealed from are reversed.