In the Matter of the Estate of WILLIAM A. GALPIN, Deceased.

Surrogate's Court, Erie County, March 11, 1937.

*Hull & Hammond* [*Clark H. Hammond* of counsel], for Helen Galpin Lamy.

*Willard T. Bushman* [*Justin C. Morgan* of counsel], for the executor.

*Charles F. Boine* [*Charles G. Barth* of counsel], for the State Tax Commission.

HART, S. William A. Galpin died March 16, 1935. During his lifetime he made five agreements with various institutions, namely, Presbyterian Board of Relief for Disabled Ministers, American Bible Society, Board of National Missions, and two with The College of Wooster, Wooster, Ohio. By these he gave certain sums of money to the above named institutions which, in turn, were to pay during his natural life and the lives of others in some instances, annuities varying in amounts. In some of the agreements the purpose of the gift was set forth and the right to amend and modify given deceased. In one of the agreements with The

College of Wooster the deceased reserved the right to cancel the annuities to his children; in the one with the Board of National Missions he reserved the right to revoke payments to his wife, Cora, as beneficiary and the privilege to change the branch of work to be aided; in the second agreement with The College of Wooster he reserved the privilege to change amounts of annuities, the name of the fund, and the redesignation of the use of the fund of the college. He modified this agreement by turning over to the college an additional $12,000, increased the amounts of annuities, designated the purpose of the fund and reserved the joint right with the trustees to alter the designation of the use of the income.

The State of New York, in determining the amount of the tax in this estate, included the present value of these annuity agreements as fixed at the date of the death of the decedent. From this part of the taxing order the executor of the estate and Helen Galpin Lamy have appealed.

The first question confronting the court is, " Were the gifts made in contemplation of death?" The answer is in the negative.

The next question is not whether there has been in the strict sense of the word a " transfer " of the property of decedent, but whether the death has brought into being or ripened for the beneficiaries under these agreements, property rights of such character as to make appropriate the imposition of the tax upon that result. (Tyler v. United States, 281 U. S. 497.)

There are cases wherein the grantor reserved to himself the life interest in the fund, and it has been held that the transfer was intended to take effect in possession and enjoyment after death. But it cannot be said in the instant case that the decisions in those cases apply. The deceased made an agreement whereby he was to receive a stipulated annual sum from the donee, and after his death others were to receive annuities. The agreements set forth and the evidence discloses that title to the sums of money involved passed to the donee during the lifetime of the donor and the funds thereafter were and remained in the possession of the donee.

One test of the nature of the transaction would be the remedy of the donor in the event of the failure of the donee to have paid the stipulated annual sum. Could he have sued and obtained a cancellation of the agreement and a refund of the money deposited, or would his course have been a suit for the payment of his annuity? I think the latter. And if, by chance, the donee was insolvent, deceased would have been the loser for there is nothing in the agreements which calls for the segregation of the sums of money paid, the sale or the manner of investment of the same by the donee. True, the agreements call for a purpose designated by

the donor in the expenditure of this money at the appropriate time, but that in no way interferes with the passing of the title nor the possession of the funds by the donee during the lifetime of the donor.

Counsel for the State Tax Commission has called attention to the phrase in the agreements, " shall become the absolute property of the College of Wooster." In view of the possession of the stocks by the donee without any restriction as to segregation, sale or investment, and an agreement without a cancellation clause, these words are meaningless.

Some stress has been laid by the State Tax Commission on the fact that the agreements offer the right of alteration and modification. This condition must be weighed in the light of the nature of the right of alteration and modification. Does it go to the heart of the agreement and affect the transfer of title and possession of the assets? Does it diminish the fund or restrict the donee in a material way, or is it a change in the method of the disposition of the corpus of the fund after the period for the payment of annuities has expired? I think the latter. Therefore, it is not the kind of amendment or modification that brings it within the rule of the cases declaring that a reservation by a donor or grantor to alter, amend or extend the terms and conditions of an instrument makes the transfer taxable. There is an element of finality about these instruments.

The trend of thought of the courts in connection with a tax of this nature must be considered. It was stated in *Matter of Enston* (113 N. Y. 174, at p. 178): " In such a case they have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law." (See *Matter of Thorne*, 44 App. Div. 8, 10; *Matter of Vassar*, 127 N. Y. 1.)

While the United States Supreme Court on the point of construction of statutes has stated that where the State courts have construed a statute the United States Supreme Court will be bound by the construction unless a Federal constitutional question is involved (*Guaranty Trust Co.* v. *Blodgett*, 287 U. S. 509), nevertheless the reasoning of this court in dealing with statutes of the nature of the one in question and the questions arising therefrom are very much to be considered.

The court, in the case of *Hirsh* v. *United States* (35 F. [2d] 982, at pp. 985, 986), had this to say: " Upon no logical theory can it be claimed that the transfer of the securities was not intended to take effect in possession or enjoyment until at or after decedent's death. The transfer was complete upon the execution of the con-

tract and was absolute and without reservation. The transferees entered at once into the possession and enjoyment of the securities. There was no restriction placed upon their sale or disposal. The transfer was absolute, and decedent completely and irrevocably divested himself of all title, right, or interest in the securities conveyed. It is clear also that the securities were not chargeable with the annuity. Each of the four children was personally obligated to pay a specified annuity regardless of whether any return was received from the securities and each child was financially able to pay the annuity. The decedent had no control whatever over the property conveyed after the transfer, nor did he have any power to change the terms or provisions of the annuity which had been contracted for in the case of each child."

I think this case presents facts more favorable to the appellants than *Matter of Edgerton* (35 App. Div. 125; affd., without opinion, 158 N. Y. 671), which case was decided against the taxing authority.

The court said, in *Matter of Honeyman* (98 N. J. Eq. 638; 129 A. 393): " But where the enjoyment of the thing transferred is in nowise delayed until the donor's death, notwithstanding that the donee's entire income may be in nowise increased, or may be even diminished, until the donor's death, the transfer is not taxable. Judged by this standard, then, where a transfer is made immediate as to title and possession, it is not taxable unless there is some condition, reservation or provision by which some interest in, or identifiably tied up with, the very thing transferred, is reserved from the donee until the donor's death.

" In the case at bar the transfer to the donee is immediate and absolute. There is no restriction or encumbrance on what the donee may do with the thing transferred, from the very moment of the transfer. The promise of the donee to pay the donor for life an annual sum which is, in fact, equal to six per cent. of the value of the thing transferred, is entirely separate from and independent of the thing actually transferred. Whatever may hereafter happen to the thing transferred, whether it be by investment and reinvestment increased or diminished, or entirely lost, whether the income received therefrom by the donee increases or decreases or vanishes, in nowise varies or affects the obligation of the donee under its promise or contract."

It is my opinion that these life annuity agreements do not come within the provision of the Tax Law.

In view of the conclusion that I have reached, it is deemed unnecessary to discuss the question that the attempt to tax violates the Fifth Amendment of the Constitution of the United States.

Submit decree modifying the order of November 4, 1935, by striking therefrom any tax on the annuities totaling $65,475.