**FAULKNER, Estate of, In re.**

Probate Court, Greene County.

Decided April 14, 1952.

J. M. Burtch, Jr., J. Ralston Werum, Asst. Attys. Genl., Columbus, for Department of Taxation.

Wm. A. Miller, Xenia, for Faulkner Estate.

## OPINION

By McCALLISTER, J.

This matter is before this court by virtue of exceptions filed by the Department of Taxation to an inheritance tax determination holding certain transactions tax exempt.

The decedent, James W. Faulkner, on February 2, 1949, about two and one-half years prior to his death, transferred by deeds two farms to two different grantees. These grantees were not related to the decedent; they were sons of a former tenant of decedent. Both deeds conveyed absolute fee simple titles. At the same time that the deeds were executed each grantee and wife made a separate contract with the decedent agreeing to pay the sum of $1000.00 per year for the life of decedent and the sum of $600.00 per year for the decedent's wife if she survived him. In addition to the aforesaid sums each grantee also agreed to indemnify the decedent for any gift, inheritance, or estate tax assessed against the decedent or his estate. The inheritance tax return shows each farm to be valued at about $21,000.00, and the sums to be paid decedent and wife to be worth about $7,800.00 for each farm. At the time the farms were conveyed decedent was 83 years old and his wife was 72. Decedent died testate on or about October 26, 1951, leaving his wife a life estate; there were small legacies to nieces and nephews and to some non-relatives; remainder was given to a niece and nephew. This will was made January 19, 1951. The total value of decedent's estate, exclusive of the farms, was $52,000.00.

The Department of Taxation excepted on the ground that said transfers were made "in contemplation of death, and/or intended to take effect in possession or enjoyment at or after death"; §5332, par. 3, sub-par. (a) and (b) GC. The exceptor presented no testimony, but offered the tax determination and then rested.

The Estate presented the testimony of Sam Bone, father of the two grantees of the farms. He testified that he had been a tenant of decedent for about 40 years and that as far back as 1937 the decedent indicated a desire to give the farms to him, but that this was not done because decedent did not want to incur the gift tax. The two grantees were contacted about the proposed gifts to them about two weeks before the deeds were executed in February of 1949.

As to transfers made more than two years before death, the authorities hold that the burden of proof is placed on the Department of Taxation. The department has failed

to meet this proof as concerns these transfers being made "in contemplation of death." See **O. Jur., Vol. 38, page 1249,** and cases cited therein.

The question as to these transfers "intended to take effect in possession or enjoyment at or after death" is not so easily disposed of, as there seems to be no reported case from Ohio.

The two cases cited by the Department of Taxation are clearly different on the facts. Brandeth's Estate, 62 N. E., 563, involved a transfer of stock by donor reserving to himself, by separate agreement, dividends for life and voting rights to said stock. Todd's Estate, 85 Atlantic, 845, involved advancements by donor of amounts devised by will, the donor taking back notes to cover the amounts advanced. Both cases held that the gifts did not take effect until death of donor and so were taxable. The following case, cited in the brief for decedent's estate in Krause's Estate, 325 Pa., 479, 191 A. 162, and involved the following situation: donor made a gift of $35,000.00 to a college and in return received from the college a writing which bound the college "to pay the donor a life annuity of six (6%) percent in semi-annual payments, and the sum so given to be considered as an executed gift, without any account or liability therefor." The court held that the gift was not taxable because there was an executed gift to the college and it could do with it as it pleased, and that the college, not the fund, was liable for the payments to the donor. There are a number of cases from other states which are in accord with the principle announced in the Krause case. In substance they hold that where there is a completed gift and an agreement by the donee to pay a sum of money to the donor for life, such gift is not taxable if the property given is not bound to produce the money to be paid to the donor, the obligation to pay being a personal one of the donee. Some of the cases are more comprehensive on their facts but they all support the principle stated above. They may be found as follows: In re Honeyman, 98 N. J. Eq., 638, 129 A. 393; In re Edgerton, 54 N. Y. Supp., 700, 52 N. E., 1124; In re Thorne, 60 N. Y. Supp., 419; Hirsch v. U. S., 35 Fed. Ind., 982; In re Seaich, 240 N. Y. Supp., 524; In re Hamilton (Wisc.), 259 N. W., 433; People v. Missionary Society (Ill.), 173 N. E., 132; In re Galpin, 295 N. Y. Supp., 192; In re Case (Wash.), 70 Pac. 2nd., 806; Fidelity Trust Co. v. Martin (N. J.), 192 A. 74; 49 A. L. R. 885; 67 A. L. R. 1253.

Referring to the facts of the case at issue, we find two instruments; one, an absolute deed in fee simple for each farm; the other, an agreement or promise to pay, one of which is set out as follows:

"Promise to Pay Money

"WHEREAS, James W. Faulkner and Elizabeth E. Faulkner, husband and wife, have this day conveyed a farm of 160 acres in Military Survey No. 1731, in Caesarscreek Township, Greene County, Ohio, to the undersigned, Paul H. Bone and Hazel L. Bone, husband and wife, by deed of gift, and the Parties thereto agree that the reasonable present value of said farm is One Hundred ($100.00) Dollars per acre or a total of Sixteen Thousand ($16,000.00) Dollars, and

"WHEREAS, the said James W. Faulkner and Elizabeth E. Faulkner, the grantors, desire to reserve a rental from said farm for and during their natural lives and the lifetime of the survivor of them, and the said Paul H. Bone and Hazel L. Bone, the grantees, have accepted the conveyance of said farm without any other consideration than the reserved rental or annual payments to be made hereunder, and acknowledge that said farm was conveyed without any other consideration whatsoever and as a deed of gift to them, and

"WHEREAS, it is the belief of both Parties to said undertaking that said transfer is made free of any gift, inheritance or estate taxes whatsoever, but there remains the possibility that such gift, inheritance or estate taxes may hereafter be assessed against such transfer and against James W. Faulkner and/or Elizabeth E. Faulkner, and it is the intention of the grantees that such premises be received by them subject to reimbursing the grantors for any such tax or levy when and if the same may be made;

"NOW, THEREFORE, We, Paul H. Bone and Hazel L. Bone, jointly and severally, in consideration of the premises, do hereby promise to pay to James W. Faulkner the sum of One Thousand ($1,000.00) Dollars per year so long as the said James W. Faulkner shall live, said annual payments to be made in semi-annual installments of Five Hundred ($500.00) Dollars each on the first day of July and the first day of January in each calendar year beginning on July 1, 1949, and continuing to the death of the said James W. Faulkner; the last semi-annual installment shall be pro rated in proportion to the number of days from the date the preceding installment was due to the date of death in proportion to the whole semi-annual term; we, jointly and severally, further promise to pay to Elizabeth E. Faulkner, if she survives her said husband, James W. Faulkner, the sum of Six Hundred ($600.00) Dollars per year, payable in semi-annual installments of Three Hundred Dollars each on the first day of each January and July, the first of such payments beginning on the first of such dates following the date of the death of James W. Faulkner; should the said Elizabeth E. Faulkner predecease the said James

W. Faulkner, then no payments whatsoever shall be made to Elizabeth E. Faulkner; the last semi-annual payment due to Elizabeth E. Faulkner shall be pro rated in the proportion as hereinbefore provided for the last payment due to James W. Faulkner.

"We, jointly and severally, do hereby covenant with the said James W. Faulkner and Elizabeth E. Faulkner that we will indemnify and save harmless the said James W. Faulkner and Elizabeth E. Faulkner from any levy of any gift tax, inheritance tax or estate tax which may be levied or assessed them, or either of them, by virtue of the conveyance of the farm hereinbefore described to us, and that the indemnity or payment provided for in this paragraph shall be in addition to the rents promised to be paid in the preceding paragraph.

"IN WITNESS WHEREOF, we have hereunto subscribed our hands to duplicate copies hereof at Xenia, Ohio, this 2nd day of February, 1949.

Paul H. Bone
Hazel L. Bone"

The promise to pay pertaining to the other farm conveyed is the same in substance as the above. Now you will note that the prefatory statements in the "promise to pay money" agreement (paragraph 2) states that James W. Faulkner and Elizabeth E. Faulkner, the grantors, desire to reserve a rental from said farm for and during their natural lives, and the lifetime of the survivor of them; in the same paragraph the phrase "reserved rental or annual payments" is also used; and the word "rents" is used in the next to last line of the last paragraph of said agreement. The use of the word "rent" or "rental" has caused this court to look at the agreement from "its four corners" so to speak to determine if the money to be paid Faulkner and wife was bound to come out of the farms conveyed, thereby depriving the donee of an interest therein. The common law recognized "ground rent" as an incorporeal hereditament. It appears to this court that "ground rent" could be created only by deed. An annuity is considered a charge against a person to pay a sum of money. While the agreements in form speak of "rent" or "rental payments" yet the courts must look to the substance of such matters; the words used to describe the payments are not of themselves decisive as to this matter. Now it appears in the case at issue that while the deeds and agreements were executed as one transaction and so must be construed together, yet a fee simple title is recognized by the authorities as good against the "whole world." The deeds to the two donees in this case permitted them to sell, mortgage, give away, com-

mit waste, or to operate the farms in any way they saw fit, without hindrance, consent, or notice to the donor. In fact there was nothing more for the donor to do, nothing more that he could do in regard to the farms. If there had been default in the annual payments, the donor would have to hold the donees personally liable, but not the farms. The language in the agreement binds the donees personally, but does not in any way create an interest in, or a charge against the farms. The donees could pay the donor out of farm income if the donees so desired, but were not required to do so by the agreement; conversely, if the farms did not produce sufficient income, the agreements bound the donees to make payments just the same. Actually the payments amounted to an annuity in favor of the donor and his wife.

Therefore, this court holds that:

1. Said transfers were not made in contemplation of death.

2. Said transfers were not made or intended to take effect in possession or enjoyment at or after such death.

Exceptions of Department of Taxation are hereby overruled.