Helen Louise JOHNSTON et al.,
Plaintiffs,

v.

Howard L. THOMAS et al., Defendants.

Civ. A. No. 6813.

United States District Court

S. D. Ohio, E. D.

Oct. 20, 1967.

Robert M. Huffer, Circleville, Ohio, Thomas W. Munger, Lafayette, Ind., John M. Adams, Columbus, Ohio, for plaintiffs.

Crist, Davis & Weldon, Richard W. Penn, Circleville, Ohio, for defendants.

## OPINION

KINNEARY, District Judge.

This is an action for ejectment and damages brought by Helen Louise Johnston and William K. Foresman against Cecil Cook, Harold G. Cook, J. Howard Cook, Mary E. Cook, Richard D. Dyer, Anna P. Edelblute, Girard E. Edelblute, Dorothy Frazier, Neal Frazier, Marilyn M. Johnson, Robert M. Johnson, Charles E. Kropp, Howard L. Thomas, Nina E. Thomas, Harold L. Wynkoop, Luana M. Wynkoop, Alvin York and Martha J. York. The Court's jurisdiction under Title 28, United States Code, Section 1332(a) was not contested, and the action was tried by the Court without the intervention of a jury.

The subject matter of this action is the ownership of approximately one hundred and seventy (170) acres of real estate situated on Virginia Military Survey No. 450 in Wayne and Jackson Townships, Pickaway County, Ohio. Such realty was owned by William Foresman when he died testate on February 17, 1921, in Pickaway County, Ohio. The will of William Foresman, which was admitted to probate on February 21, 1921, in the Pickaway County Probate Court, devised by Item Twelve a life estate in fifteen (15) acres of this realty to Charles Shisler. By Item Fifteen, a life estate in the remaining portion of this property was devised to Foresman's wife, Nannie W. Foresman. Nannie Foresman died on September 29, 1953, and the other life tenant, Charles Shisler, died sometime prior to that date.

The remainder interest in this property was devised by Item Seventeen of William Foresman's will to his nephew John P. Foresman.

The factual dispute in this suit concerns the legal characterization of certain instruments executed in March, 1930. At that time, John P. Foresman was indebted to the National Fowler Bank of Lafayette, Indiana, Farmers & Traders State Bank of Lafayette, Indiana, City Trust Company and Ralph D. Reser, Trustee in Liquidation of the West Point Bank of West Point, Indiana.

In order "to discharge and liquidate" these debts, John P. Foresman, his wife, and their two children [the latter being the plaintiffs herein] entered into a trust agreement under which the Foresmans were to convey by warranty deed the remainder interest in the real estate which was devised in William Foresman's will. The "trust agreement" further provided that the conveyance of the real estate and certain other prop-

erty [1] would be accepted by the creditors as "full payment and satisfaction of their several debts" and that they would "surrender unto the debtors the several evidences of said indebtedness." The trustees named in this agreement were given full power to manage, rent, lease, operate and sell this real estate, and they were provided with a schedule for applying the collections to the several debts.

Several days after the completion of the "trust agreement" John P. Foresman and his wife Clara executed a "warranty deed" by which they did "give, grant, bargain, sell and convey" to the trustees the interest in the one hundred and seventy (170) acres of real estate for the stated consideration of $24,909.58—the total of the several debts listed in the "trust agreement."[2]

After the designation of successor trustees, the property was conveyed by warranty deed to United Mercantile Agencies which had obtained the interests of the subscribing creditors under the trust agreement. The present defendants purchased for valuable consideration parts of the real estate either directly from United Mercantile or from others who had so purchased.

The initial inquiry in this case is whether the characterization of the instruments of March, 1930, with its subsequent legal implications, is to be made on the basis of the law of Ohio (where the property was situated) or the law of Indiana (where the instruments were executed).

In view of the fact that the jurisdiction of this action is founded on diversity, this Court is required to apply the substantive law of the state in which it sits. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This ruling has been extended to provide that a federal court, so situated, is to apply the choice of law principles of the state in which it sits. Klaxon v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This Court must then look here to the Ohio rules on conflicts of laws. The limited Ohio authority indicates that interpretation of an instrument transferring realty, as well as the mode of execution and validity, is to be governed by the law of the situs state. Jennings v. Jennings, 21 Ohio St. 56 (1871) [dictum as to the interpretation of a devise of realty]. Thus, the law of Ohio must be used as the basis of the characterization.

While the parties have contended throughout the pendency of this action that the distinction is to be made as to whether the instruments of March, 1930, constitute an absolute conveyance or a mortgage in equity, the formal distinction is to be made between an absolute or unconditional deed of trust and a deed of trust in the nature of the mortgage. 37 O.Jur.2d, Mortgages § 12. This distinction is based on the fact that the execution was made to a trustee rather than directly to the creditor, and it is made for the purpose of employing the proper legal terminology.

Even though there is a single instrument denominated a "deed," the "deed" and "trust agreement" are treated and construed as a single instrument of conveyance in view of the explicit reference to the "trust agreement" in the language of the "deed." Mutual Exhibit 3, p. 2; In re Faulkner's Estate, 108 N.E.2d 118 (Ohio, P.Ct. Greene County 1952).

In attempting to make this distinction we are concerned with a question of the intent of the grantor (mortgagor). Plaintiffs seek to show the conveyance,

---

1. Plaintiffs and their parents were also to transfer any interest in stock in the Second National Bank of Circleville, Ohio. This stock passed under the will of William Foresman, but its ownership is not a subject of the instant suit. That question has been resolved, adversely to the present plaintiffs, in Moore v. Foresman, 172 Ohio St. 559, 179 N.E.2d 349 (1962).

2. At the same time a "bill of sale" for the interest in the bank stock was executed. The trustees under the "trust agreement" were the purchasers for the stated consideration of $1.00.

which appears absolute on its face, was intended as a security device by means of the production of a letter from one of the trustees to the mother of plaintiffs.

■■ This letter is proffered as an exception to the parol evidence rule. The Ohio law, as to varying integrated instruments by evidence outside the written agreements, provides that parol evidence is admissible to prove that a conveyance absolute on its face is in fact a mortgage in equity or trust deed in the nature of a mortgage. Wilson v. Giddings, 28 Ohio St. 554 (1876); Ford v. Ford, Ohio App., 69 Ohio Law Abst. 97, 118 N.E.2d 235 (1954); Newkirk v. Hattendorf, 16 Ohio Cir.Ct.R., N.S., 358 (1905). The language of the cases also indicates that such evidence must be clear and convincing, for courts are not to disregard or modify the written agreement of the parties with undue haste. *Wilson*, supra; *Newkirk*, supra.

Even though this authority would allow the production of the letter, the probative value of that writing is yet another question. The text of that letter, written more than a month after the execution of the disputed instruments, is as follows:

April 18, 1930

Mrs. John P. Foresman,
332 Chauncey Ave.,
West Lafayette, Ind.

Dear Madam:

In consideration of deed and bill of sale executed by yourself, Mr. Foresman and your two children covering the land left Mr. Foresman by his uncle near Circleville, Ohio, also interest in bank stock in the Second National Bank of Circleville, Ohio, subject to the life estate of his aunt, our only desire in this matter is to secure principal and accrued interest at the rate of six per cent per annum on the amount of indebtedness described in the Trust Agreement, plus attorney's fees, which we have paid in the matter, and any other expenses which we are

put to in making collection of the amount due us.

Yours truly,

/s/ R. D. Reser
Cashier

■ It is plaintiffs' contention that by the use of the words "to secure" in this letter, Reser intended that the legal meaning of obtaining payment be ascribed to these words. However, the more reasonable and better conclusion is that the words were used with the intended meaning of "to obtain." No evidence was produced at trial as to the reason for the writing of this letter—e.g., whether it was written in response to a specific question. There is nothing more than the letter itself on which we may base a conclusion as to its meaning, and plaintiffs would thus have this Court construe an "ambiguous" instrument with the aid of "ambiguous" parol evidence. Therefore, plaintiffs have failed to present parol evidence which is sufficiently clear and convincing so as to allow this Court to disregard or modify the written agreement of the parties.

For recovery purposes plaintiffs are in no worse position, because, even if the instruments could be assumed to constitute a mortgage, plaintiffs' claim is barred by the statute of limitations, laches, and the doctrine of bona fide purchasers for value.

■■ The law of Ohio provides that a mortgagor cannot maintain an action for ejectment against a mortgagee in possession after condition broken, or against anyone claiming under such mortgagee, until he has offered to redeem. Stockwell v. Gambell, 16 Ohio Cir.Ct.R., N.S., 427 (1905), affirmed, Wilson v. Stockwell, 78 Ohio St. 394, 85 N.E. 1135 (1908). However, the right to redeem is barred twenty-one (21) years after the date the cause of action accrues, and the cause of action accrues on the maturity date of the debts secured by the mortgage. Ibid.

Plaintiffs have made no showing that they previously have offered to redeem. If they have not, the right is now barred by the statute of limitations inasmuch as all of the debts allegedly secured by the "mortgage" had matured prior to the date of execution of the trust agreement. In that situation the statute of limitations on the right to redeem would have run at the latest in March, 1951.

If the "debt" secured by the "mortgage" is said to be the new promise to pay the old debts, the statute of limitations would still start to run in March, 1930 inasmuch as a cause of action accrues on the date of the promise when no date of repayment of a loan is specified. [There are no cases from Ohio stating this law, but this is the view of those jurisdictions which have reached the question. See e.g., Alexanderson v. Wessman, 158 Neb. 614, 64 N.W.2d 306 (1954).]

Plaintiffs answer the assertion of the statute of limitations as a defense with the contention that a statute of limitations does not run against a continuing or subsisting trust (one cognizable in a court of equity). Plaintiffs' Trial Brief, p. 6. However, it has been held that a trust created for the benefit of creditors is not one of those technical and continuing trusts as to which the statute of limitations does not run. Irwin v. Lloyd, 20 Ohio Cir.Ct.R. 339 (1900), affirmed, 65 Ohio St. 55, 61 N.E. 157 (1901).

Therefore, even if plaintiffs could have adduced enough evidence to show the instruments to be a mortgage, their ejectment action is barred by the statute of limitations.

The doctrine of laches is the application in equity of a psuedo-statute of limitations which will prevent a suit in a court of equity by a plaintiff who has allowed so much time to elapse that the intervening equities of the defendant will outweigh those of plaintiff. While a statute of limitations is not strictly applicable in an equity suit, it is generally applied to suits in equity on the theory that "equity follows the law." 34 O.Jur.2d, Limitations of Actions § 21.

Even if the statute of limitations of twenty-one years for the recovery of property (which herein involves an equity ruling on the proper construction of the instruments of March, 1930), is not applied to the instant suit, plaintiffs may be barred from a court of equity if their delay in commencing suit has been unreasonable. The time of commencement of the action was thirty-three years after the agreement was entered into, fourteen years after the conveyance to United Mercantile Agencies, and fourteen years after the conveyance of the entire parcel to Howard L. Thomas.

It is unreasonable to allow plaintiffs to wait this long to assert title to the land when they had at least constructive notice of the claims of others to ownership of the property. The constructive notice arises from the action of defendants in the physical alteration of the land which would be consistent with action taken by owners rather than tenants.

With all of these considerations taken together, the delay of plaintiffs has been unreasonable. Thus, even if the claim is not barred by the statute of limitations their inordinate delay makes available the defense of laches as to the plaintiffs' prayer that the instruments be declared a mortgage in equity. Piatt v. Smith's Executors, 12 Ohio St. 561 (1861).

It has been decided that a conveyance, absolute in form, will not be construed to be a mortgage in equity where such a construction would operate fraudulently as to subsequent bona fide purchasers for value. Miami Exporting Co. v. Bank of United States, Wright 249 (Ohio).

The deed and the trust instrument of March, 1930, appear to be unambiguous. Therefore, the subsequent purchasers would have had no notice from a

**38**

search of the record of the prior equitable interests of plaintiffs.

■ To say that the subsequent purchasers had no notice, there is an assertion of plaintiffs which must be overcome. This assertion is that the recorded deed shows that it was given to trustees, and that this put defendants on notice (constructive notice at least because it appears on the record) that plaintiffs had an equitable interest in the property. However, on its face, the combination of the deed and trust agreement discloses no equitable interest on the part of plaintiffs. The instruments taken together give the appearance of an absolute conveyance. The trust instrument speaks of the deed being given "in full satisfaction and liquidation" of debts owing, and the deed speaks of the transaction as being a bargain, sale and conveyance of the property to the grantees to hold it forever. There appears to be no ambiguity on the face of these instruments which would give any indication that the transaction was other than an absolute conveyance.

■ Plaintiffs are attempting to prove the nature of the transaction as a mortgage not by any facts on the face of the combination of instruments, but rather by the production of parol evidence. In this case the parol evidence comes in to prove intention, and it is not necessary that there be any ambiguity on the face of the writing whose meaning is sought to be varied. Thus, the allowance of parol evidence does not demonstrate a conclusion that the instruments are ambiguous.

Therefore, since plaintiffs did not prove knowledge on the part of defendants of any matter except what appears on the record, their claim is barred by the doctrine of bona fide purchasers for value.

The initial conclusion which may be reached is that the instruments of March 12, 1930 constituted an absolute conveyance. Even if the instruments were construed to be a deed of trust in the nature of a mortgage, plaintiffs' claim is barred by the running of the statute of limitations, the doctrine of laches, the doctrine of bona fide purchasers for value.

Plaintiffs' alternative basis for seeking ejectment is that there was a violation of the Trust Agreement of March, 1930. In effect, plaintiffs' claim is that there was not a valid exercise of the power of sale in the Trust Agreement; and therefore, plaintiffs hold title in the property inasmuch as they are the heirs of a mortgagor in a "lien theory" state.

However, even if we assume, as plaintiffs contend, that the power was invalidly exercised and that plaintiffs are the heirs of mortgagors, their claim is still barred for the reasons stated in the prior discussion because plaintiffs would again be reduced to seeking ejectment of mortgagees in possession after condition broken.

Accordingly, plaintiffs requested relief should be and hereby is denied.

Defendants shall recover their costs from plaintiffs.