In the Matter of MILLWARD'S ESTATE.

*(Surrogate's Court, Westchester County, Filed January, 1894.)*

1. TAX—TRANSFER—APPRAISEMENT.
    In making appraisement of estate subject to the transfer tax, debts, funeral, and administration expenses are not to be deducted.

2. SAME—SURROGATE'S VALUATION.
    The surrogate, in fixing such value, may deduct the debts owing by decedent from the value of the estate.

3. SAME—INDETERMINATE BEQUEST.
    A bequest to the widow for life or until remarriage, cannot be appraised until the termination of such estate.

Appeal by the executor from the decree fixing the transfer tax.

George B. Bonney, for appellants; D. Verplanck, assistant district attorney, for respondents.

COFFIN, S.—The appraiser was entirely right in declining to hear evidence in regard to the debts of the deceased, the funeral expenses, and expenses of administration. The Court of Appeals held in Re Swift, 137 N. Y. 77-87, 50 St. Rep. 81, which arose under the act of 1887, that "manifestly, under the law, that which is to be reported by the appraiser for the purpose of the tax is the value of the interest passing to the legatee under the will, without any deduction for any purpose." This supports the view taken on the subject by this court in Re Ludlow, 4 Misc. Rep. 594, under the act of 1892. The two actions on this point are substantially alike. This court, however, is asked to deduct the tax on the sum of the debts, funeral expenses, commissions of the executors, and the expenses, aggregating about $26,700, exclusive of commissions, which were not estimated, but inclusive of a claim of a physician for $2,629, now alleged to be in dispute, and also the sum of $2,500 as the estimated expenses of administration. The amount in value of the estate or property to be taxed should be fixed with mathematical certainty, and not by mere estimate or approximation. This is easily done at once on general and specific legacies, but on those embraced in a residuary clause such amount subject to the tax, if any, cannot be fixed until the accounting shall have been had, if we are allowed to deduct for debts, funeral expenses, and expenses of administration, for the physician's bill is stated to be in dispute; and hence, how much it may be reduced or affected by the result, and the cost of litigation, if any, or how it may affect the estimated expenses of administration, cannot now be known. Whether any deduction, such as is sought here, can even then be made, is involved in such doubt. The value of the property or estate to be appraised is defined by the twenty-

second section of the act of 1892 to be the property or estate
of the testator passing or transferred, and not as the property
or interest therein passing or transferred to individual legatees,
etc.   Hence the appraiser must make his report of the whole
value of each legacy or distributive share at the point of trans-
fer, without making any deduction whatever; and the surrogate
must then fix the tax upon the value of the "estate" so reported
which each legatee is to pay, and give notice to each legatee.
The legatees, "if dissatisfied with the appraisement or assess-
ment and determination of tax, may appeal therefrom to the
surrogate wthin sixty days from the fixing, assessing and deter-
mination of tax as herein provided, upon filing in the office of
the surrogate a written notice of appeal, which shall state the
ground upon which the appeal is taken."   If it turn out on the
appeal that no error was made in the appraiser's valuation, or
in the fixing, assessing, or determination of the tax, then it
would seem that the appeal would fail.   It cannot be discovered
that the act anywhere expressly authorizes the surrogate to de-
duct from the appraised value any debts, funeral expenses, com-
missions of executors, or expenses of administration; and it is,
therefore, fairly questionable whether the legatees do not take
*cum onere,* as the tax is not put upon what the legatees do not
get, but upon the value of the estate at the point or period of the
transfer, which is the date of the death of the testator.   It is
believed that courts should seek for a solution of this doubt in
favor of legatees in other provisions of the act, that unjust re-
sults in some cases (insolvent estates, for instance) may be
avoided.   Accordingly, we find in section 6 that if any debts
shall be proven against the estate of the decedent after the pay-
ment of a legacy or distributive share from which the tax has
been deducted or paid, and the person to whom the legacy has
been paid shall be required to refund a *pro rata* share, the exe-
cutor, etc., shall refund to him an equitable proportion of the
tax.   While this is not the case, it may fairly be inferred that
the legislative intention was that debts owing by decedent should
be deducted from the value of the estate so left by him.   In

general, this would affect the residuum in testamentary cases. Again, section 10 provides that the surrogate "shall have jurisdiction to hear and determine all questions arising under the provisions of this act, and to do any act in relation thereto authorized by law to be done by a surrogate in other matters or proceedings coming within his jurisdiction." This is a question so arising, and he may, in an accounting proceeding, allow debts admitted or established and paid to be credited and deducted from the *corpus* of the estate, or, if not paid, to direct their payment by the decree; and, of course, has jurisdiction to allow commissions, funeral expenses, and expenses of administration, but has, in general, no power to hear and determine a disputed claim. It seems, therefore, that he may, at the proper time, allow the several items in question when ascertained. In this case, however, as they are not known, they must abide the accounting as above stated.

But there is another ground, not stated in the notice of appeal, which renders the appraisal and fixing of the tax at present impossible. Where an estate for life is given, with remainder over, it is an easy matter for the superintendent of insurance to fix the value of the life estate. But here the widow is given the use of the whole for life, and, in case of her remarriage, then the use of one-half only. While we have an established method for ascertaining the value of a life estate of a widow, based upon an arbitrary rule as to probable time of death, there is lacking any such rule to enable us to approximate the period when, if at all, she may remarry. That defies all calculations. Hence the value of her estate, or of the remainder, cannot now be ascertained for the purpose of the assessment of the tax. That cannot be done until her death or marriage. The decree is therefore set aside and vacated.