In re EDGERTON'S ESTATE.

(Supreme Court, Appellate Division, Third Department. November 16, 1898.)

1. GIFTS CAUSA MORTIS—TAXATION.
    A transfer of stocks in consideration of the payment of certain annuities—providing for the sale of the stocks in case of a default in the payment of such annuities, but reserving no power of revocation—is not a gift causa mortis, within Laws 1892, c. 399, taxing gifts made in contemplation of death.

2. SAME.
    A person transferred stocks to certain persons, who surrendered them to the corporations, and new stock was issued in their names, on which they received the dividends, and on which they voted. The transfer provided for a payment of certain annuities, regardless of the amount of the dividends in the stock, and required the deposit of the stocks with a trust company to secure such payment, and also the giving of bonds as further security, and provided for a sale by the trust company in case of a default in the payment of the annuities, which in some cases exceeded the amount of the dividends. *Held*, that the transfers took effect at once, and therefore were not taxable under Laws 1892, c. 399, providing for a tax on any transfer or gift "made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment, at or after such death."

3. SAME—PROVISION FOR FUNERAL EXPENSES.
    A transfer of stock in trust for the erection of a monument to the donor, and the care of the grave, is for funeral expenses, and not subject to taxation under Laws 1892, c. 399, providing for a tax on any gift made in contemplation of death, or intended to take effect in possession or enjoyment at or after such death.

Appeal from surrogate's court, Delaware county.

Appeal by the county treasurer of Delaware county from an order of the surrogate's court determining the value of the estate of Erastus S. Edgerton subject to taxation under the act in relation to taxable transfers of property, and fixing the amount of the tax. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Emmet R. Olcott, for appellant.

Hornblower, Byrne & Taylor, for respondent.

MERWIN, J.    On the 15th April, 1893, Erastus S. Edgerton, a resident of this state, died intestate at Franklin, in the county of Delaware.    He left a widow and two sisters, and a nephew and two nieces, the children of a deceased brother, as his only heirs and next of kin.    He had been doing business in the state of Minnesota, and some of his property was there; and letters of administration upon his estate were there taken out by his brother-in-law, Delos A. Monfort.    No administration has been granted in this state.    On or about the 31st March, 1888, he made transfers of the greater portion of his property to his sisters and nephew and nieces, and the controversy in this case is over the question whether such transfers are subject to taxation under the act relating to taxable transfers of property (chapter 713, Laws 1887; chapter 399, Laws 1892).    He transferred stocks of the estimated value of $78,035 to his sister Mary J. Monfort; taking back from her and her husband, Delos A. Monfort, a joint and several bond in the penal sum of $156,000, dated March 31, 1888. This was conditioned for the performance of the agreements therein stated; and there was a recital that the obligee had transferred, or was about to transfer, to said Mary J., for her own use and benefit, certain securities, a list of which was attached in a schedule, with a valuation in the aggregate as above stated.    The obligors thereby agreed to pay or cause to be paid to said Erastus S. Edgerton the sum of $5,500 per annum during his life; the sum of $2,750 to be paid on the 10th July then next, and a like sum every six months thereafter. The obligors agreed—

"To deposit as collateral security for the performance of this agreement the said securities, or the certificates or other evidence thereof that may be received by the undersigned, the said Mary J. Monfort, or such other securities as may be approved of by the said Erastus S. Edgerton, in lieu of the whole or any part thereof; the same to be deposited with the Saint Paul Trust Company, of Saint Paul, Minnesota, and to remain so deposited with the said trust company until the death of the said Erastus S. Edgerton, when the undersigned, Mary J. Monfort, or her executors, administrators, or assigns, shall be entitled to the delivery of the same by the said trust company."

In case the obligors failed to make any payment for a period of 60 days after it became due, then the trust company was authorized to collect dividends on the securities until sufficient shall have been collected to pay the amount due, or, upon reasonable notice to both parties, sell such portion of the securities as may be necessary to realize a sum sufficient to pay such amount, and then pay the same to said obligee.    The obligors agreed, on behalf of themselves and their respective executors, administrators, and assigns, to deposit and keep deposited with the trust company such powers of attorney as may be necessary to enable the trust company to carry out these provisions.    It was provided that the obligors should be at liberty, with the consent of the obligee, to sell any of the named securities, and substitute others in their place, to be held by the trust company in the same manner as the original securities.    Mr. Edgerton also transferred to his sister Mrs. Monfort other stocks, of the value then of

about $50,000; taking from her and her husband a bond in the penal
sum of $100,000, dated March 31, 1888.    This provided for the pay-
ment to Eliza C. Edgerton, the wife of Erastus S. Edgerton, of the sum
of $3,000 per annum during her life, with provision for deposit of col-
lateral security until the death of said Eliza; and in other respects
the bond was similar to the one first above described.    A similar
transfer was made by Mr. Edgerton to his sister Elizabeth E. Wilcox
of stocks of the value of about $47,500; a bond being given back by
Mrs. Wilcox, in the penal sum of $95,000, conditioned for the payment
of an annuity to Mr. Edgerton of $2,800 during his life, and contain-
ing other provisions similar to the bond first described.    A similar
transfer was made by Mr. Edgerton to his nephew, Erastus D. Edger-
ton, and his nieces, Helen E. Edgerton and Mary A. Edgerton, of
stocks of the estimated value of $78,375, and a joint and several bond
given back, in the penal sum of $156,000, conditioned for the payment
of $5,500 per annum to said Erastus S. during his life, and contain-
ing other provisions in like form as in the bond first described.    A
similar transfer was made to these parties of stocks of the value of
about $50,000, and a bond taken back for the payment of an annuity
of $3,000 to Mrs. Eliza C. Edgerton during her life, containing condi-
tions like the one given for a like annuity, and above referred to.    At
the same date a joint and several bond was given by Delos A. and
Mary J. Monfort, Erastus D., Helen E., and Mary A. Edgerton to
Erastus S. Edgerton, in the penal sum of $5,500, conditioned for the
payment of annuities to three named persons during their respective
lives.    These annuities amounted in the aggregate to $500 a year,
and were to an uncle, an aunt, and a cousin of said Erastus S.    No
transfer or special consideration for this bond appears.    At the same
date, by indenture between Erastus S. Edgerton, of the first part,
and Delos A. Monfort and Erastus D. Edgerton, of the second part,
Erastus S. transferred to the parties of the second part, and the sur-
vivor of them, certain stock; and the latter agreed that upon the death
of Erastus S. they would convert the same into cash, and from the
proceeds apply $10,000 to the erection of a family monument on the
burial plot owned by Erastus S. in the Ouleout Cemetery, at Franklin,
and, if any surplus should remain of such proceeds, pay the same, to
the extent of $2,000, to the Ouleout Valley Cemetery Association,
in trust to invest the same and apply the income to the repair, preser-
vation, or renewal of any monument upon the said plot, or for planting
or cultivating trees or plants in or around the same.    It was also
provided in said instrument that the income of said stock should,
during the lifetime of Erastus S., be divided between his sister Mary
J. Monfort and the children of Thomas H. Edgerton, a deceased broth-
er,—one half to said Mary and the other half to said children,—and,
in case of any surplus over $12,000 from the proceeds of the sale
of the stock, it should be divided the same way.    Provision was
also made for the transfer of the legal title of the stock to the parties
of the second part, for the deposit of the certificates with the said
St. Paul Trust Company until the death of said Erastus S., and for
the appointment of a substitute in case of the death of both of the
parties of the second part before the death of Erastus S.    The claim

on behalf of the county treasurer is that all these transfers were taxable. The surrogate's court held to the contrary.

It appears that Mr. Edgerton had other property, to the amount of about $40,000 or upwards, some of which was thereafter disposed of and transferred by him during his lifetime, and the balance came to the hands of his administrator. In 1888 he was of the age of 72 years, and his wife was of the age of 68 years. He was not in good health, though he was then recovering from an illness. He had made a will, which seems to have been destroyed at or after the transactions of 1888. He was evidently desirous of getting rid of the care of the greater part of the property, and took this method of doing so, and still securing to himself an abundant provision for the needs of himself and wife during their lives.

By chapter 713 of the Laws of 1887, which was in force when these transfers were made, a tax was imposed upon the transfer of any property, "by deed, grant, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor." By chapter 399 of the Laws of 1892, which was in force at the time of the death of Mr. Edgerton, a tax was imposed upon any transfer made "by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment, at or after such death." Under the act of 1887 transfers to a sister were exempt; otherwise under the act of 1892, unless the estate transferred was less than $10,000. It is argued by the appellants that the act of 1892 is applicable, and that the transfers in question were made in contemplation of the death of the transferror, and therefore within the provision of that act, above quoted. That provision was under consideration in Re Seaman's Estate, 147 N. Y. 69, 76, 41 N. E. 401, and was construed to refer to grants or gifts causa mortis. The transfers here in question were not such gifts or grants, for there was no power of revocation. Doty v. Willson, 47 N. Y. 585; 2 Kent, Comm. 444; Bliss v. Fosdick, 86 Hun, 162, 173, 33 N. Y. Supp. 317, 151 N. Y. 625, 45 N. E. 1131. In no event was Mr. Edgerton entitled to revoke the transfers or resume the title. He was entitled to the annuities. He could, if necessary, cause a sale of the stock to pay any annuity unpaid, and that was the end of his right. Whichever statute (that of 1887 or of 1892) is deemed to control the case, the question is whether these transfers were intended to take effect in possession or enjoyment at or after the death of the transferror, within the meaning of the law. It appears that the certificates of stock held by Mr. Edgerton were assigned by him to the respective transferees, and by them surrendered to the respective corporations, and new certificates issued in the names of the respective transferees. These certificates, together with powers of attorney, were deposited with the trust company as required by the bonds, and for the purposes therein mentioned. The transferees, however, received the dividends on the stocks, and voted thereon. In case of the transfers to Mrs. Monfort and to Erastus D. Edgerton and his sisters, the annuities in fact paid by them were considerably in excess of the dividends. In case of Mrs. Wilcox, the dividends and annuities were about the same. The an-

nuities were all paid, so that resort was not had to the collateral security. In one instance other security was substituted, in accordance with the provisions of the bonds. The obligors in the bonds were liable for the annuities, whether or not there were any dividends, and although the stocks might become worthless. The title of the stocks vested in the transferees, for their own use and benefit, according to the recital in the bonds. In performance of their obligations, they deposited with the trust company the certificates, as collateral security. Subject to the contingency that would give the trust company the right to exercise its power, their interest was assignable, and would, in case of death, pass to their representatives. The power to the trust company was in the nature of an incumbrance. It is hardly claimed that a gift inter vivos, or an advancement simply, would be within the provisions of the law. There would be no succession to title at or after the death. In re Swift, 137 N. Y. 77, 32 N. E. 1096; In re Hoffman's Estate, 143 N. Y. 327, 38 N. E. 311. The title would in such a case have passed absolutely, before the death, in possession and enjoyment. It is, however, argued in the present case that the circumstance that provision was made for the deposit of the certificates as collateral security changed the situation, and indicated an intention that the transfers should not take effect in possession and enjoyment until the death. In fact, the transfers, from the time of their delivery, did take effect, in possession and enjoyment; and there was no provision for disturbing such possession or enjoyment, unless the obligors failed to perform their agreements, and then only to the extent necessary to enforce payment of the debts of the obligors. Nothing further was necessary to be done by the grantor or donor to complete the title of the transferees. It may be observed that, in case of the transfers connected with the bonds given for the benefit of Mrs Edgerton, the right to hold as collateral security ended with the life of Mrs. Edgerton. The transfers here, aside from the trust deed as to the monument, were, I think, intended to take effect, in possession and enjoyment, at the time they were made, and therefore were not within the statute. It can hardly be said there was an attempt to evade the law, inasmuch as, under the law as it was at the time the transfers were made, the sisters, who received about two-thirds of the property, were exempt.

No particular point seems to be made as to the provision for a monument, and care of burial lot. Assuming that the transfer covered by that instrument would not be deemed to take effect, in possession, as to the proceeds of the sale of the stock therein mentioned, until the death of Mr. Edgerton, still the provision for a monument is considered a part of funeral expenses, and so not subject to the tax, as ordinarily understood. In re Milward's Estate, 6 Misc. Rep. 425, 27 N. Y. Supp. 286. A bequest for maintenance of the decedent's burial lot has been held to be exempt, as funeral expenses. In re Vinot's Estate (Surr.) 7 N. Y. Supp. 517. It appears that the value of the securities covered by the trust deed did not exceed $12,000; that $10,000 was in fact expended for a monument, as therein provided, and $2,000 paid over to the cemetery association therein named, for the purposes therein expressed. This was probably ex-

empt, under the provisions of section 10 of chapter 133 of the Laws of 1847, as amended by chapter 31 of the Laws of 1877.   In re Herr, 55 Hun, 167, 7 N. Y. Supp. 852.

I find no good ground for disturbing the conclusion of the surrogate's court, and its order and decree should be affirmed.

Order and decree affirmed, with costs.   All concur.