(No. 19994.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
THE UNITED CHRISTIAN MISSIONARY SOCIETY *et al.*
Appellees.

*Opinion filed October 25, 1930.*

FARMER, J., dissenting.

OSCAR E. CARLSTROM, Attorney General, ROYCE A. KID-
DER, and LELAND P. MILLER, for appellant.

SAMUEL ASHBY, and STONE, MCLAREN & WEBB, (LAW-
RENCE E. STONE, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Application was made to the county judge of Sangamon
county for the assessment of an inheritance tax in the es-
tate of Mary C. Freeman, deceased. A tax was assessed
against a part of the estate, which is not in controversy,
but the judge held that $27,000 transferred by the deceased
to the United Christian Missionary Society was not subject
to a tax. An appeal was prosecuted to the county court
of Sangamon county. The court held that the fund was

not subject to a tax, and a further appeal has been prosecuted to this court.

The case was heard in the county court upon a stipulation, as provided in section 103 of the Practice act, in substance as follows: Mary C. Freeman, of Springfield, Illinois, died June 11, 1928, leaving a last will and testament, which was admitted to probate on July 16, 1928, and an executor was appointed. She was unmarried and left surviving certain collateral relatives. The appraised value of her estate other than the property in controversy amounted to $57,427.77, with legal deductions of $6319.59. A tax was assessed on the balance, which is not questioned. In addition to the above property the deceased, who was sixty-seven years of age, on March 20, 1925, transferred to the United Christian Missionary Society $27,000, and said society delivered to the deceased an instrument in words and figures following:

"No. 412 $27,000.00
UNITED CHRISTIAN MISSIONARY SOCIETY,
St. Louis, Missouri.
ANNUITY BOND.

"Whereas, Mrs. Mary C. Freeman, of Springfield, Illinois, has donated to and paid into the treasury of the United Christian Missionary Society, a corporation, the sum of twenty-seven thousand dollars:

"Now, therefore, the said United Christian Missionary Society, in consideration thereof, hereby agrees to pay to said Mrs. Mary C. Freeman, during her lifetime, and after her death, should they survive her, to her two cousins, Mrs. Alice Tilbury and Miss Savilla Taylor, jointly, during their lifetime, or to the surviving one of them, during her lifetime, an annuity of one thousand six hundred twenty dollars, in semi-annual payments of eight hundred ten dollars each, payable April 1 and October 1, said payments to cease on the death of said Mary C. Freeman, Alice Tilbury and Savilla Taylor, and the said sum donated by her, as aforesaid, is to be considered as an executed gift to said United Christian Missionary Society, and to belong to said society, from this date without any account or liability therefor.

"Signed and sealed at St. Louis, Missouri, this twentieth day of March, 1925."

On the back of this instrument is the following:

"In connection with her application for annuity bond for $27,000, Mrs. Mary C. Freeman of Springfield, Illinois, mentioned to the undersigned that through the influence of Mr. W. F. Rothenburger, pastor of the First Christian Church, Springfield, Illinois, she had been contributing $50 a year to a fund known as the Freeman Rainbow Fund, to be used by the First Christian Church for any beneficent purpose which would bring a special blessing to the person or persons assisted by it.

"Mrs. Freeman stated that she would continue this $50 annual contribution during her lifetime, and would arrange with Mrs. Tilbury and Miss Savilla Taylor, her cousins mentioned as survivors in her application, to make said payments during their lifetime. She expressed the wish that after the decease of all three, there might be set aside annually the sum of $50 for such Freeman Rainbow Fund, either to be paid directly to First Christian Church, Springfield, Illinois, or to be used in harmony with the purposes of said fund. Said $50 annually might be used to help some worthy young person through school. One thousand dollars of her annuity gift is to be set aside as a permanent fund, when released from annuity, the interest on which would provide this $50 annually for the Freeman Rainbow Fund of the First Christian Church of Springfield, Illinois, to be paid on or about September 9, annually, which is agreed to."

The sum of $1620, in equal semi-annual payments, was paid by the United Christian Missionary Society to the deceased from the date of this instrument to the date of her death, the annual payment being six per cent of $27,000. The United Christian Missionary Society is a foreign, non-resident, religious corporation organized under the laws of Ohio not for pecuniary profit, with its principal office at Indianapolis, Indiana. Alice Tilbury is a cousin of the deceased and was fifty-two years of age at the date of the death of the deceased, and Savilla Taylor is also a cousin and was fifty years of age at the time of the death of the deceased. In case the gift is subject to an assessment it is agreed that $442.20 should be assessed to Savilla Taylor, $421.74 to Alice Tilbury and $1150.11 to the United Christian Missionary Society.

Section 1 of the Inheritance Tax act imposes a tax upon the transfer of any property or income therefrom when such transfer is by gift made in contemplation of the death of the donor or intended to take effect in possession or enjoyment at or after the death of the donor. It is not claimed by appellant that this gift was made in contemplation of the death of Mary C. Freeman, therefore the question is, Was the gift intended to take effect in possession or enjoyment at or after the death of the donor? If, as claimed by appellant, the right of possession and enjoyment did not pass or vest at the date of the instrument but did pass and vest at the death of Mary C. Freeman, the interests of appellees were taxable. In support of its contention appellant cites *People* v. *McCormick,* 327 Ill. 547, *People* v. *Kelley,* 218 id. 509, and *People* v. *Estate of Moir,* 207 id. 180. These cases are not controlling. In each of them the donor did not part with full and complete ownership, possession and control of the property but reserved a right to share in the profits or to recall the gift, or there was reserved some other right, title, interest or control over the property which prevented the donees from coming into the right, possession or enjoyment until the death of the donor, thereby rendering the gift subject to a tax. (*People* v. *Shutts,* 305 Ill. 539; *People* v. *Porter,* 287 id. 401; *People* v. *Schaefer,* 266 id. 334; *People* v. *Carpenter,* 264 id. 400.) In the *McCormick case* it was held that to be taxable a transfer made by the owner prior to his death must have been made in contemplation of death or it must take effect upon the death of the owner. If the right of possession or enjoyment passes at the time of the execution of the instrument the transfer is not taxable, notwithstanding the actual possession and enjoyment must await the donor's death.

In *Beatty* v. *Western College,* 177 Ill. 280, the facts were quite similar to the facts in this case and the conclusion there reached is applicable in this case. It was there

held that to constitute a gift of money *in præsenti* there must be an absolute delivery, without conditions as to the vesting of the title, but a promise by the donee not constituting a condition of delivery of title but consistent with it, such as the payment of interest or annuities, does not invalidate the gift; that a deposit of money with a college for the benefit of and to become and be the property of the college, to be used as the board of trustees or executive committee thereof might direct, in consideration of the payment to the depositor of a specified annuity, is an executed absolute gift of money, the provision for the annuity merely giving a right of action for such annuity in case of non-payment.

The only evidence as to the legal effect of the gift in this case is contained in the so-called annuity bond as the same appears in the stipulation under the hands and seals of the president and secretary of the United Christian Missionary Society. The bond recites the agreement in its entirety. It recites that the donor has donated and paid into the treasury of the United Christian Missionary Society the sum of $27,000; that said sum so donated by her is to be considered as an executed gift to said society from the date thereof and is to belong to the society without any account or liability therefor. There were no reservations of any kind or character in the bond. The donor parted with the full and complete ownership, control and possession of the fund. She had no right to recall the gift. No interest was to be paid on the fund or out of the fund. No purpose was designated for which the money should be used, except that $1000 of the fund, after the annuity ceased, was to be set apart as a fund, the interest on which was to provide $50 annually for the Freeman Rainbow Fund for the First Christian Church of Springfield, Illinois. The balance of the fund became the absolute property of the society, to be mingled with other funds and to be used for whatever purpose the society might see

fit, and this right became vested in the society on the date the bond was executed. Provision was made for the payment of an annuity to the donor during her life and to her two cousins for life after the death óf the donor. This annuity, however, was not to be paid out of this donation or the interest thereon. It was a separate and distinct obligation of the society and became effective as of the date of the gift and not upon the death of the donor. If the society failed to pay as agreed, the remedy of the beneficiaries was not for the recovery of the donation but the remedy was in an action against the society for the amount due on the annuity. If the society failed financially the beneficiaries were the losers. The donation was made over three years before the death of the donor, and it is not even claimed that it was made in contemplation of her death. The gift was absolute, the right to the possession and enjoyment of the annuity passed at the time the instrument was executed, and the annuity was enjoyed by the donor during her lifetime. The rights of the two cousins to the annuity were also fixed during the lifetime of the donor, notwithstanding the fact that their actual possession and enjoyment of the annuity must await the donor's death.

The court correctly held that the fund was not subject to a tax, and the order is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Order affirmed.*

Mr. JUSTICE FARMER, dissenting.