(Nos. 34364-5-6 Cons.—
The People of the State of Illinois, Appellant, *vs.* Matilda H. Schallerer, Exrx., *et al.,* Appellees.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

Davis, C.J., Klingbiel and House, JJ., dissenting.

Latham Castle, Attorney General, of Springfield, (William C. Wines, A. Zola Groves, Harry A. Ash, Stewart P. Mulvihill, and Joseph O. Rubinelli, of counsel,) for appellant.

Edmund A. Spencer, Paul L. Freter, and Timothy J. Crowe, all of Chicago, for appellee in No. 34364; Chapman & Cutler, of Chicago, (Frederick O. Dicus, and John N. Vander Vries, of counsel,) for appellee in No. 34365; Litsinger, Gatenbey & Spuller, of Chicago, (Andrew W. Gatenbey, and Fred H. Law, Jr., of counsel,) for appellee in No. 34366.

Mr. Justice Hershey delivered the opinion of the court:

Three cases from the county court of Cook County have been consolidated for argument and opinion. Each involves the following question arising under the Illinois Inheritance Tax Act: where a person purchases an annuity contract providing for a fixed annual stipend for a definite period of time or for as long as he should live, with a provision that if he die before receiving the stipulated amount (*i.e.*, purchase price plus interest) then the difference be-

tween that sum and the annuities received is to be paid to named beneficiaries other than his estate, upon the death of such person does such payment of the balance, or a portion thereof remaining, measure an Illinois inheritance tax?

The county court answered the question in the negative, and the State appeals. Revenue being involved, this court has jurisdiction on direct appeal.

There are 20 refund annuity contracts involved in this litigation, all in substantially the same form. The decedent in each instance purchased the contract from an insurance company, which agreed to make stipulated payments to the purchaser during his lifetime, and upon his death to pay any balance remaining to designated beneficiaries. Under some of the policies the stipulated payments would cease prior to death if the purchase price plus interest was returned, whereas in others the company was obligated to continue those payments for the lifetime of the purchaser regardless of how long the latter lived. In each, however, any amount remaining upon the death of the purchaser was to be paid to beneficiaries designated by him, and the purchaser retained the right to withdraw the cash surrender value at any time or to change the beneficiaries.

Originally enacted in 1895, the Illinois Inheritance Tax Act has remained substantially unchanged since 1909. The pertinent provision here is section 1, which provides, *inter alia,* as follows: "A tax shall be and is hereby imposed upon the transfer of any property * * * in the following cases: * * * 3. When the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift, * * * intended to take effect in possession or enjoyment at or after such death * * *." Ill. Rev. Stat. 1951, chap. 120, par. 375.

The crux of the matter is whether the creation of these refund annuities and the subsequent payments to the named beneficiaries constitute "transfer of any property" "intended to take effect in possession or enjoyment" at or after death.

An analysis of the transactions and legal relationships created thereby is determinative of the issue.

In each of the annuities here in question the premium or purchase price was paid, contributed, or deposited by the decedent. Each annuity contract provided for payments of annuities to the decedent purchaser with a provision that if the original investment or the original investment plus accruals was not returned to the decedent during his lifetime, the sum retained by the company should be payable in annuities or a lump sum to the named beneficiaries or their estates. In each of the annuity contracts the purchasing decedent retained one or more of the following powers: to modify or revoke the provisions of the contract, to withdraw in whole or part the funds retained by the company, or to revoke or change the designation of beneficiaries.

A refund annuity, such as we have in the instant situation, is a contract whereby the annuitant protects himself, during his life, by making an investment to assure annual payments to himself during his life. If he dies prematurely, his beneficiaries receive the undistributed portion of the investment. (*In re Atkins' Estate,* 129 N. J. Eq. 186, 18 A.2d 45; *Garos* v. *State Tax Com.* 99 N.H. 319.) The monies refunded to the beneficiaries in each of these refund annuity situations are only that undistributed portion of the decedent's original investment or deposit plus accruals, monies belonging to decedent during his lifetime and not acquired by virtue of the occurrence of a stated risk.

This court has determined that a transfer intended to take effect in possession or enjoyment at or after death is a disposition in which the donor retains the economic interest or enjoyment of the property during his life. (*People* v. *Moses,* 363 Ill. 423.) Upon the designation of beneficiaries in these refund annuity contracts a transfer occurred. (*In re Bayer's Estate,* 154 Pa. 230, 26 A.2d 202; *In re Atkins' Estate,* 129 N. J. Eq. 186, 18 A.2d 45.) The transfer did not then vest in possession or enjoyment.

Only upon the death of the decedent purchaser of or investor in the refund annuity, did the interest of the beneficiary ripen into possession or enjoyment. It was a transfer or passing of a *contingent* interest in the annuity investment in which the decedent retained control of or an interest in the property transferred in one or more respects. It is therefore clear that in the refund annuities which are here in question we find (1) a transfer of property, (2) by grant or gift, (3) intended to take effect in possession or enjoyment at or after the death of the grantor or donor. Thus these refund annuities clearly fit within the specified limits and requirements of section 1 of the Illinois Inheritance Tax Act and are taxable transfers. Numerous of our sister States, having essentially similar statutes, have arrived at the same conclusion. *In re Atkins' Estate,* 129 N. J. Eq. 186, 18 A.2d 45; *Gregg* v. *Commissioner,* 315 Mass. 704, 54 N.E.2d 169; *Garos* v. *State Tax Com.* 99 N.H. 319; *In re Bayer's Estate,* 154 Pa. 230, 26 A.2d 202.

Contrary to the repeated assertions of appellees, this is a case of first impression in Illinois, notwithstanding *People* v. *United Christian Missionary Society,* reported at 341 Ill. 251, which they contend determines this issue. That case, however, did not involve a refund annuity contract. There an immediate executed gift of $27,000 was made to the Society, subject only to the provision that upon cessation of the annuity $1000 thereof should be set apart for a certain fund. The Society agreed to pay an annuity of $1620 to the donor for life and then to her two cousins jointly for life, should they survive her, or to the surviving one of them: "This annuity, however, was not to be paid out of this donation or the interest thereon. It was a separate and distinct obligation of the Society and became effective as of the date of the gift and not upon the death of the donor. * * * The rights of the two cousins to the annuity were also fixed during the lifetime of the donor,

notwithstanding the fact that their actual possession and enjoyment of the annuity must await the donor's death." (*People* v. *United Christian Missionary Society*, 341 Ill. 251.) We there further held, citing *People* v. *McCormick*, 327 Ill. 547, that if the right of possession or enjoyment passes at the time of the execution of the instrument the transfer is not taxable notwithstanding the actual possession and enjoyment must await the donor's death. The donor retained no control over the fund donated, she retained no power to revoke or cancel all or any part of the gift or transfer, she retained no power to modify or change beneficiaries, and such transfer was therefore not taxable. That annuity was not a refund annuity such as is now in issue. Hence the *United Christian Missionary case* has no application to our immediate situation, and is not determinative of the issues here.

One of the decedents, Erick Gunnard Lindquist, owned a certain refund annuity issued October 20, 1947, by the Great Western Life Assurance Company, for a single premium of $50,000. By its terms, beginning October 20, 1955, he was to receive $350 per month, but if he died prior to first payment (which he did) the company would pay the greater of the single premium or the cash surrender value to the beneficiary named. On August 10, 1949, the said decedent entered into an antenuptial agreement with Doris I. Hanson, now his widow, wherein she waived and relinquished all her right, title, claim, or interest in or to the real and personal estate of this decedent except her right to receive payments from the aforesaid annuity in which decedent named her as beneficiary to receive refund annuities therefrom after his death.

Appellee in No. 34366 insists that the proceeds of the Great Western Life Assurance Company refund annuity contract payable to the beneficiary, Doris Lindquist, so named in performance of the antenuptial contract, is not a taxable transfer under the Illinois Inheritance Tax Act.

The appellant insists, however, that the proceeds from said contract are taxable for the reason that the payments under said contract are made in fulfillment of an antenuptial agreement, the consideration for which was a release by the beneficiary of her marital rights, including dower.

Dower rights are taxable under the act and hence anything received in substitution therefor is taxable. (*Billings* v. *People*, 189 Ill. 472; *People* v. *Estate of Field*, 248 Ill. 147.) In our opinion, the mere fact that marital rights, including dower, are released by an antenuptial contract,— or the existence of the antenuptial contract itself—is not determinative of the issues here. The refund annuity contract, received by the beneficiary, is similar in character to those heretofore discussed. The refund annuity contract as amended to name Doris Lindquist as beneficiary, in consideration for the release of her marital rights and in performance of the antenuptial contract, transferred only a contingent interest to receive the payments due thereunder at the death of the donor and did not transfer a vested interest. Had the donor lived so long, he might have received the entire refund leaving nothing to distribute to the beneficiary. The proceeds of the refund annuity payable to the beneficiary are thus taxable.

The interests received by all of the beneficiaries of the refund annuity contracts here in issue are thus transfers subject to the Illinois Inheritance Tax. The judgments of the county court of Cook County are reversed, the causes are remanded thereto, and it is directed that orders be entered in each cause assessing a tax upon the proceeds of these annuity contracts in accordance with the provisions of the Illinois Inheritance Tax Act.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE DAVIS, dissenting:

I dissent from the opinion of the court because of my conviction that the imposition of taxes is solely a legisla-

tive function and beyond the authority of the executive and judicial branches of our government.

The language of the statute (Ill. Rev. Stat. 1951, chap. 120, par. 375, sec. 1, subsec. 3,) cited by the Attorney General and relied upon by the court as authorizing the tax against the proceeds of the refund annuity contracts in question, has been embodied in our Inheritance Tax Act since 1895 when it was adopted from the New York statute relating to inheritance taxes. (*People* v. *Beckers,* 413 Ill. 102.) To date neither the State of New York nor the State of Illinois has taxed the type of refund annuities here involved. In 1928, 1931, 1932, 1934, 1937, 1950, and 1952, the Manuals of Illinois Inheritance Tax Law and Procedure, prepared by successive Attorneys General, clearly interpreted this very Inheritance Tax Act to be inapplicable to the proceeds of such refund annuities. Between 1920 and 1955 the Attorney General's office did not even suggest that such annuities, if payable to an individual beneficiary, were subject to the Illinois inheritance tax. Nor was this attitude negative in character, for since 1898, the courts of New York have considered such contracts to be without the statute, (*In re Edgerton's Estate,* 54 N.Y.S. 700, aff'd 158 N.Y. 671; *Matter of Thorne's Estate,* 60 N.Y.S. 419; *In re Wilson's Estate,* 257 N.Y.S. 230,) and in 1930 this court reached a similar conclusion in *People* v. *United Christian Missionary Society,* 341 Ill. 251. Also see *People* v. *Forman,* 322 Ill. 223, and *People* v. *Kelley,* 218 Ill. 509.

In the face of this administrative history and these adjudications, the legislature re-enacted the applicable section of the Inheritance Tax Act, (Ill. Rev. Stat. 1957, chap. 120, par. 375,) nine times without a change in language, (Laws 1909, p. 311; Laws 1919, p. 757; Laws 1921, p. 768; Laws 1927, p. 747; Laws 1929, p. 610; Laws 1933, p. 889; Laws 1949, p. 1289; Laws 1951, p. 1394; Laws 1953, p. 251,) although in other areas of taxation it was particularly alert to the requirement of

additional revenue. Cf. Retailers's Occupation Tax Act, Ill. Rev. Stat. 1957, chap. 120, par. 440 *et seq.*, enacted 1933; estate tax provisions of Inheritance Tax Act, Ill. Rev. Stat. 1957, chap. 120, par. 403a, 403b, added in 1949, and 403c added in 1955; Cigarette Tax Act, Ill. Rev. Stat. 1957, chap. 120, par 453.1 *et seq.*, enacted in 1941; Cigarette Use Tax Act, chap. 120, par. 453.31, *et seq.*, enacted in 1951; Use Tax Act, Ill. Rev. Stat. 1957, chap. 120, par. 439.1 *et seq.*, enacted in 1955.

In the light of this background, I find the court's reasoning unpersuasive. It is contrary to the judicial gloss given the New York statute, from which our statute was adopted, (*People* v. *Beckers,* 413 Ill. 102; *People* v. *Snyder,* 353 Ill. 184,) and disregards over 30 years of administrative interpretation by the Attorney General, which under recognized rules of statutory construction should be honored. (*McNely* v. *Board of Education,* 9 Ill.2d 143, 150 and 151; *Commissioner of Internal Revenue* v. *Pontarelli,* 97 F.2d 793, 796.) Unlike the court, I cannot distinguish the incidents of taxation inherent in these refund annuities from those present in the annuity in *People* v. *United Christian Missionary Society,* 341 Ill. 251, or in the usual life insurance policy having a cash surrender value. In all three instances the ultimate beneficiary may receive an undetermined amount by way of gift which may take effect after the death of the donor, and the right of such beneficiary is not in a specific fund, but rather arises under a contract entered into for valuable consideration. Upon failure of the society or company to make payments pursuant to the agreement, the remedy of the beneficiary is not an action for the recovery of the specific fund involved, but rather on the contract.

It is not the role of the judiciary to ascertain whether the proceeds payable under these contracts ought to be taxed, but merely to determine, in the light of legal principles, whether the legislature intended to tax them. In view

of the adoption and repeated re-enactment of this legislation after its exposition by succeeding Attorneys General and its construction by both New York and Illinois courts, I cannot find such an intention. Furthermore, as stated in *People* v. *Snyder,* 353 Ill. 184 at 189: "The Inheritance Tax Act imposes a special tax, and in cases of doubt the language must be construed strictly against the government and in favor of the taxpayer. (*People* v. *Keshner,* 332 Ill. 608; *In re Estate of Ullmann,* 263 id. 528.)"

The basic wisdom of leaving changes in taxation to the action of the legislature is well illustrated here. Refund annuities of substantial value are involved which were purchased at a time when the Attorney General considered them nontaxable. By a belated modification in the Attorney General's interpretation, acquiesced in by this court, the value of these annuities has been retroactively decreased, while leaving substantially similar cash surrender values in life insurance policies untouched. Such change in the pattern of our inheritance taxation should be made only after exploration and consideration of the complicated aspects of refund annuity contracts and endowments, as well as other types of insurance contracts. The legislature, through committees, hearings, and other of its processes, can adequately inquire into the complicated circumstances attendant upon any deviation taxwise, from our established precedent. In the division of powers, these essential functions of investigation and inquiry were vested in the legislative branch of our government. This court is neither practically equipped for such task, nor constitutionally authorized to enter upon it.

I would affirm the judgments of the county court of Cook County and hold that the payments of the proceeds of the contracts in question were not transfers of property within the meaning and intent of the Illinois Inheritance Tax Act.

KLINGBIEL and HOUSE, JJ., also dissenting.