THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* THE ESTATE OF HERBERT L. SCHILLING, Deceased, Defendant-Appellee.

Fifth District   No. 75-441

Opinion filed August 5, 1976.

JONES, J., dissenting.

William J. Scott, Attorney General, of Springfield (Lehman D. Krause, Assistant Attorney General, of counsel), for the People.

74

Curt C. Lindauer, Jr., of Belleville, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The State appeals from a judgment of the circuit court of St. Clair County overruling its objection to an inheritance tax return filed by the administrator of the estate of Herbert Schilling.

The issue on appeal is whether the benefits paid to a widow by a union pension plan upon the death of her husband are subject to Illinois inheritance tax.

Herbert Schilling, a plumber, was a member of the Plumbers' and Pipefitters' Union, Local 101. He died on March 29, 1974, when a house on which he was working collapsed. He was 54 years of age, and a resident of Illinois, when he died.

The probate division of the circuit court of St. Clair County appointed the Belleville National Savings Bank administrator of Schilling's estate. The bank, as administrator, filed an inheritance tax return in the circuit court evaluating the property passing from Herbert Schilling to his widow, Ruth Schilling, at $20,435.61. The bank did not include in this amount $16,392.69 paid from the union pension fund to the widow. The bank calculated that a tax of $8.71 was due on the widow's inheritance.

Under section 11 of the Inheritance Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 385), the State objected to the bank's failure to list the payment from the pension fund as part of the widow's inheritance, claiming that the amount Ruth Schilling had received from her husband was $36,828.30, on which a tax of $336.57, rather than $8.71, was due. At the hearing in the circuit court, the State introduced into evidence a copy of the pension plan and trust agreement of the Plumbers' and Pipefitters' Union, Local 101.

The provisions of the pension plan and trust agreement were as follows. The union's pension fund was to consist solely of employer contributions. Plumbing contractors were to contribute 75¢ to the fund for each regular, paid hour that the union's members worked for them, and double that amount for each overtime hour. The contractors were to pay their contributions to the trustee of the pension fund.

The trustee was authorized to invest the employer contributions in whatever properties and securities it thought were "sound and suitable," so long as at least 20% of the contribution were invested in United States government bonds. The inheritance tax return filed by the bank indicated that the money paid to Ruth Schilling from the pension fund came from a group annuity contract the trustee had purchased for the union's members.

An individual's interest in the pension fund was determined by his age and the length of his employment as a union member. At age 65, a member could retire and receive a pension for the rest of his life which equaled the number of hours worked by him for which his employers had contributed to the pension fund multiplied by a fixed percent per month. A pension board, consisting of three union men and three men representing employers, which administered the pension plan, could change the pension payments at any time upon the advice of an actuary.

If a pensioner died before the sum of all his pension payments equaled his nonforfeitable interest in the pension fund, the difference between that sum and his nonforfeitable interest was to be paid to his beneficiaries. The pension plan defined a union member's nonforfeitable interest as the total contributions made to the fund by his employer for his hours of labor, if either of two conditions were met; that is, the interest became nonforfeitable when the union member worked 5,000 hours within five years during which contributions were payable to the fund by his employers, or when the union member reached age 65.

If a union member died before reaching age 65, his nonforfeitable interest in the pension fund was to be distributed to his beneficiaries. If a member quit his job or left the union before reaching age 65, he could not demand immediate payment of his nonforfeitable interest; instead, the pension board had the discretion to delay payment if it thought such delay would benefit the member.

The pension plan required each union member to designate his beneficiaries in writing, and to file this writing with the trustee and with the pension board. A member could change his beneficiaries by giving written notice to the trustee and pension board. Herbert Schilling designated his wife as the beneficiary under the pension plan.

The pension plan specifically stated that it did not create any contractual obligations between an employer and a union member, and did not impair any contractual obligations between the union and the employers. The plan also provided that the interest of a member and his beneficiaries in the pension fund could not be assigned by them or seized by their creditors.

The attorney for the estate stipulated at the hearing on the People's objection that Herbert Schilling had worked 5,000 hours in five years during which his employers had contributed to the pension fund, so that his interest in the pension fund had become nonforfeitable even though he was less than 65 years of age when he died. The $16,392.69 paid to Ruth Schilling represented Herbert Schilling's nonforfeitable interest in the pension fund. After the hearing, the circuit court overruled the State's objection.

The State argues on appeal that the payment from the pension fund to the widow was a transfer of property from a decedent which was subject to the inheritance tax.

Section 1 of the Inheritance Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 375) states, in part:

"A tax is imposed upon the transfer of any property * * * to persons * * * not hereinafter exempted, in the following cases:

* * *

When the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift * * * intended to take effect in possession or enjoyment at or after such death, * * * ."

A widow is entitled to a $20,000 exemption from the inheritance tax on property she receives from her deceased husband. (Ill. Rev. Stat. 1975, ch. 120, par. 375.) Property worth more than $20,000 passed to Ruth Schilling from her husband, even if the amount paid to her by the pension plan is not regarded as having passed from her husband. Thus, no portion of the money paid from the pension fund to Ruth Schilling was exempt from the inheritance tax because of her relationship to the decedent. In other words, with respect to the payment by the pension plan, Ruth Schilling was "not hereinafter exempted" within the meaning of section 1 of the Inheritance Tax Act.

The widow's right to receive this payment from the pension fund was not established until her husband's death because her husband, while alive, could have named a different beneficiary at any time. Her interest in the pension fund, therefore became effective "in possession or enjoyment at or after such death" of her husband. Herbert Schilling's designating her the beneficiary of his nonforfeitable interest showed that he intended this result. The widow's interest was thus one "intended to take effect in possession or enjoyment at or after such death" within the meaning of section 1 of the Act.

The payment by the pension plan to the widow, consequently was taxable if it were a "transfer * * * of property * * * by deed, grant, bargain, sale or gift from the decedent." To support their assertion that the payment was such a transfer, the State relies upon *People v. Schallerer*, 12 Ill. 2d 240, 145 N.E.2d 585.

The *Schallerer* case involved a number of similar refund annuity contracts. Each annuity was purchased with money paid by the person who initially received the annuity income. Under each annuity, the difference between the purchaser's investment, plus interest thereon, and the total income returned to the purchaser before he died was to be paid to beneficiaries the purchaser had selected. Each annuity gave the purchaser at least one of these powers: the power to change beneficiaries, to modify terms of the contract, and to withdraw part or all of the

purchaser's investment from the company which sold the annuity. All the purchasers died, and payments were made from the annuities to the purchasers' beneficiaries.

In *Schallerer*, the Illinois Supreme Court determined that the designation of beneficiaries by each purchaser was a transfer of a contingent property interest in the annuity investment from the purchaser to his beneficiaries, which he intended should take effect in possession and enjoyment after his death. The court decided, for this reason, that the payments from the annuities to the beneficiaries were subject to the inheritance tax.

The State argues that the trustee's investing a part of the pension fund in a group annuity contract, which supplied the payment to Herbert Schilling's designated beneficiary, made the present case almost identical to *Schallerer*. Despite the State's assertion, a significant difference exists between *Schallerer* and this case.

All the annuities in *Schallerer* had been purchased by decedents, during their lives, with their own assets. A principal reason for the decision in *Schallerer* was that the premiums or purchase prices of the annuities had been paid by the decedents. (See 12 Ill. 2d 240, 243, 145 N.E.2d 585, 586.) In this case, however, Herbert Schilling contributed nothing to his union's pension fund. The pension fund consisted solely of employer contributions. Although the employer contributions credited to Herbert Schilling were measured by the number of hours that he worked, this did not alter the nature of the contributions as being from his employers rather than from him. Even the Attorney General of Illinois, in his manual interpreting the Inheritance Tax Act, recognizes a distinction between employer and employee contributions to a pension fund. The manual states that

> "Pension plans which are payable to a named beneficiary (not for the benefit of the estate) are taxable in two different ways; (1) If the decedent died before reaching retirement age, the inheritance tax will be applied against that portion of the total fund held for his benefit represented by the decedent's contribution to the total contribution (employer and employee contributions) to the fund * * * ." Attorney General of Illinois, Illinois Inheritance Tax Manual 22 (1970).

The payments by the decedents in *Schallerer*, together with the income that was returned to them from the payments, showed that they retained the enjoyment of the annuity investments during their lives. Thus the distributions from the annuities to the decedents' beneficiaries were properly subjected to the inheritance tax. (See *People v. Moses*, 363 Ill. 423, 427, 2 N.E.2d 724, 726.) Because Herbert Schilling made no contributions to his union's pension fund, however, we believe that his

enjoyment of any part of the fund during his life could be established only by showing that he could demand immediate payment of that part of the fund to himself.

According to the pension plan, a union member acquired the right to demand payments from the pension fund when he reached age 65. Until he reached that age, he might request payments from the pension fund, but the pension board, in its discretion, could delay such payments. Herbert Schilling died when he was 54 years of age. He never acquired the right to demand immediate payments from the fund. Thus he never had the enjoyment of any part of the fund.

As a consequence, the payment of $16,392.69 to the widow from the pension fund was not a transfer of property from the decedent, and was not taxable under section 1 of the Inheritance Tax Act. (See *People v. Moses; Valley Fidelity Bank & Trust Co. v. Benson* (1969), 223 Tenn. 503, 448 S.W.2d 394; *People v. Egbert* (1968), 164 Colo. 467, 436 P.2d 116.) This result agrees with an administrative interpretation of section 1 of the Act which is apparently of long standing and wide public acceptance, and which must be recognized as having great weight. Attorney General of Illinois, Illinois Inheritance Tax Manual 22 (1970); *McNely v. Board of Education*, 9 Ill. 2d 143, 150, 137 N.E.2d 63, 68.

The order of the circuit court of St. Clair County overruling the State's objection to the inheritance tax return filed by the administrator of the estate of Herbert Schilling is affirmed.

Judgment affirmed.

KARNS, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

The majority opinion has reached the conclusion that "the payment of $16,392.69 to the widow from the pension fund was not a transfer of property from the decedent, and was not taxable under section 1 of the Inheritance Tax Act." In my opinion, the designation by Herbert Schilling of his wife, Ruth Schilling, as beneficiary of the union pension plan benefits upon his death was precisely the type of taxable "transfer" contemplated by section 1 of the Inheritance Tax Act (Ill. Rev. Stat., ch. 120, par. 375). I, therefore, respectfully dissent.

As the majority opinion has pointed out, the $16,392.69 was paid to Ruth Schilling from a group annuity contract which had been purchased by the trustee of the pension plan trust of Plumbers Local No. 101. The trust fund which had been used to purchase the annuity contract consisted entirely of contributions by the employer; an employee had neither a right nor a duty to contribute to the trust fund. However, under an

"exclusive benefit clause" of the trust plan, the employer could not claim or divert any of the trust funds for purposes other than the exclusive benefit of the employees or their beneficiaries.

According to the pension plan, upon entry into the plan, each employee was to execute a written designation of beneficiary. The employee could change the beneficiary from time to time by written notice, if he so desired. If an employee died prior to his reaching retirement age or prior to the final distribution of any amount remaining to his credit, his designated beneficiary (or his estate if he had not properly designated a beneficiary), was to be paid whatever accrued amount remained to his credit. It is important, too, (but the majority opinion fails to mention) that the plan allowed the employee to name his estate as the beneficiary of his nonforfeitable interest. (See article XI, "Distribution of Non-forfeitable Interests" (1), (4).) Any employee who had completed 5,000 hours of paid employment within a five-year period during which contributions were payable by the employer was considered by the plan to have "the full value of his accrued pension credits * * * vested and non-forfeitable."

The majority opinion, in distinguishing this case from *People v. Schallerer,* 12 Ill. 2d 240, 145 N.E.2d 585, attaches controlling significance to the fact that the annuity contract involved herein was purchased with a pension fund consisting solely of employer contributions. In the opinion of the majority, unless it can be shown that Herbert Schilling contributed to the fund or that he could demand immediate payment of the part of the fund contributed on his behalf, no "transfer" occurred as contemplated by section 1 of the Inheritance Tax Act when he designated his wife as beneficiary. It is my belief that neither the statute nor case law supports this position.

Several cases from other jurisdictions have considered the same problem we are concerned with here, under similar facts and an identical or nearly identical statute. The courts deciding these cases have consistently held that when a pension plan of an employee, which provides for an annuity for the employee and death benefits to be paid to his beneficiary, gives the employee vested legal rights, the value of the death benefits payable to the beneficiary are subject to an inheritance tax. (See 42 Am. Jur. 2d *Inheritance, Estate, and Gift Taxes* §167, cases compiled in note 10 (1969); Annot., 73 A.L.R. 2d 157, §14, cases compiled at page 188 (1960).) The fact that the employer has paid the entire cost of an annuity, or has provided the entire contribution to a pension trust, has been held not of itself sufficient to establish that the employee did not have property rights in the contract; and in such cases the inheritance tax has been held to be properly imposed. (See Annot., 73 A.L.R. 2d 157, §14, cases compiled at page 190 (1960); *In re Brackett's Estate* (1955), 342 Mich. 195, 69 N.W.2d 164; *Gould v. Johnson* (1960), 156 Me. 446, 166 A.2d

481.) Moreover, the fact that the employee cannot demand immediate payment of the part of the fund held in his behalf, such payment being deferred until he reaches retirement age or until some other event occurs, does not bar application of these rules. See *In re Daniel's Estate* (1953), 159 Ohio St. 109, 111 N.E.2d 252; *In re Brackett's Estate; Borchard v. Connelly* (1953), 140 Conn. 491, 101 A.2d 497; *Dolak v. Sullivan* (1958), 145 Conn. 497, 144 A.2d 312; *Gould v. Johnson.*

A discussion of one of these cases should serve to illustrate the manner in which the courts have commonly dealt with the problem involved in the instant case. In *In re Daniel's Estate*, the employer had established a profit sharing and pension trust for the benefit of its employees. The trust funds were contributed entirely by the employer, but the employer had no right to reclaim or divert any of the funds. The portion of the fund held for each employee could not be assigned, attached, or alienated in any other way from the employee or his beneficiary. Each employee had the right to designate a beneficiary and to change the designation, if he so desired. The employee was not able to receive any of the benefits until reaching age 65. In the event an employee died before reaching age 65 or before receiving the entire benefit accrued, the benefit was to be paid to his designated beneficiary or, in the absence of a valid designation, to his estate. The employee, E. L. Daniel, died at the age of 54. The trustee paid to Daniel's designated beneficiary $26,799.76, the amount of the trust fund apportioned to Daniel. The probate court, construing an inheritance tax statute substantially the same as our own, held that a taxable succession had occurred and imposed the inheritance tax. On appeal the beneficiary argued: (1) that the decedent had not, by designating a beneficiary, brought about a succession because the decedent had no ownership and no right to alienate the portion of the trust fund held for his benefit; (2) that the payment of the money to the designated beneficiary was not a succession because it was not *from* the deceased; and (3) that the designation of a beneficiary was not a transferring of property. The Ohio Court of Appeals (93 Ohio App. 123, 112 N.E.2d 56) and the Ohio Supreme Court rejected these arguments and affirmed the judgment of the probate court:

The Ohio Court of Appeals stated:

"Under the facts here, designation of a beneficiary by the participating employee to receive his interest in the fund maturing on his death is ambulatory in character. The participant may change the designation, or revoke it entirely, and, on death, without a designated beneficiary, by the terms of the trust, the participant's share becomes a part of his estate, subject to disposition by will or the laws of descent and distribution. We, therefore, consider that the participating employees have at all

times had a vested interest in the accumulating fund, postponed only as to enjoyment and use by the terms of the trust, and that on death, the postponed rights of a participant become fixed, the prior designation of beneficiary loses its ambulatory character, and it becomes effective to require transfer and payment by the trustee of participant's accumulated interest in the fund to the designated beneficiary who succeeds thereto." (93 Ohio App. 123, 128, 112 N.E.2d 56, 59.)

And the Ohio Supreme Court stated:

"The trust fund belongs to the employees, each being the owner of his allotted portion, although the actual possession and control thereof is postponed pending severance or retirement of the employee or, as in this instance, the death of the employee. No one but such employee has the right to make any disposition of the money thus belonging to him and the consummation of the gift thereof is merely postponed. In the meantime, each employee has a vested property right in the trust fund credited to his individual account, subject to divestment only by the discharge of the employee for fraud, dishonesty or his intentional damage or destruction of company property. Under the facts in this case, the deceased employee's share of the fund remained intact until his death." 159 Ohio St. 109, 113, 111 N.E.2d 252, 254.

I feel that the facts of the instant case and our inheritance tax statute require that the result reached by the courts in *Daniel's Estate* and the other cases referred to above should also be the result reached in this case.

I cannot agree with the majority's interpretation of *People v. Schallerer.* The majority states that a principal reason for the decision in *Schallerer* was that the premiums or purchase price of the annuities had been paid by the decedents. A close reading of *Schallerer*, in my opinion, does not support this statement. Instead, it was the *control* the purchaser retained over the refund annuity that was critical to the opinion of the court in *Schallerer.* Who paid the premiums was irrelevant. Similarly, the fact that the employer in the instant case contributed the entire amount of the pension fund is irrelevant to the question whether the transfer of the funds are taxable under the Inheritance Tax Act. Moreover, the majority is in error when it states, "The payments by the decedents in *Schallerer,* together with the income that was returned to them from the payments, showed that they retained the enjoyment of the annuity investments during their lives." The decedent-purchasers in Schallerer did not retain "*enjoyment* of the annuity investment during their lives." (Emphasis added.) What they did retain were *certain powers* with respect to their investment which gave them varying degrees of control over the funds. The power to name beneficiaries, common to each refund annuity in

*Schallerer*, provided in my opinion, the critical degree of control over the funds, because when exercised, it had the effect of creating a contingent property interest in the named beneficiary. Upon the purchaser's death the contingent interest ripened into a present possessory interest and was, in the opinion of the court, thus taxable under the Inheritance Tax Act.

In the instant case it is likewise *the degree of control* over the proceeds of pension plan funds that should be the proper focus of inquiry. In the instant plan, as in *Schallerer*, the power to name a beneficiary is a power of disposition over certain property. The pension plan here allows the employee to name a beneficiary of his "vested and non-forfeitable interest." The power includes the power to name his estate as beneficiary. Moreover, the plan provides that if the employee fails to designate a beneficiary, the pension funds, if any remain, will go to his estate. In the instant case, however, the employee did exercise his power in favor of his wife. Upon exercise of the power a property interest was thus created in the wife which ripened into possession and enjoyment upon the employee's death. Because the employee died before being eligible to personally enjoy any of the pension plan fund, a transfer, for purposes of the Inheritance Tax, of property to the wife occurred that was by grant or gift and was intended to take effect at the employee's death. Accordingly, the funds received by the widow are taxable under the *Schallerer* rationale.

I am reluctant to add further discussion to this already lengthy dissenting opinion; however, one other matter must be commented upon. The majority opinion states:

"Even the Attorney General of Illinois, in his manual interpreting the Inheritance Tax Act, recognizes a distinction between employer and employee contributions to a pension fund. The manual states that

'Pension plans which are payable to a named beneficiary (not for the benefit of the estate) are taxable in two different ways; (1) If the decedent died before reaching retirement age, the inheritance tax will be applied against that portion of the total fund held for his benefit represented by the decedent's contribution to the total contribution (employer and employee contributions) to the fund * * * .' Attorney General of Illinois, Illinois Inheritance Tax Manual 22 (1970)."

The majority opinion then goes on to refer to this portion of the Attorney General's manual and conclude that the result reached by the majority "agrees with an administrative interpretation of section 1 of the Act which is apparently of long standing and wide public acceptance, and which must be recognized as having great weight." I note that on the same page of the Attorney General's Inheritance Tax Manual, two paragraphs below

the paragraph quoted by the majority opinion, appears the following:

"The Attorney General now interprets the law in connection with employee benefit plans to be that the vested interest of the decedent under such plans is taxable, whether the plan was contributory or not. The amount that the decedent could have obtained had he resigned the day he died is fully taxable to the beneficiaries thereof on the basis of a transfer thereof taking place. The fact that such amount could have been forfeited or lost because of any infraction toward the employer under an arrangement is deemed irrelevant."

If this court is going to recognize the "administrative interpretation" of the Attorney General "as having great weight," then it should not reach the conclusion reached by the majority. For, as indicated, a full reading of page 22 of the 1970 manual shows that the "administrative interpretation" is the exact opposite of what the majority states it to be.

In light of the several cases referred to above, I feel this case should be reversed.